

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2002

# In Re: Prudential

Precedential or Non-Precedential:

Docket 99-5960

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation
"In Re: Prudential" (2002). *2002 Decisions.* Paper 39.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/39

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 24, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5960

    IN RE:

PRUDENTIAL INSURANCE COMPANY
AMERICA SALES PRACTICE LITIGATION
AGENT ACTIONS

Michael P. Malakoff, Esquire, and
Malakoff, Doyle & Finberg, P.C.,

        Appellants

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 95-cv-04704
District Judge: Honorable William H. Walls

(Argued: December 5, 2000)

Before: McKEE, ROSENN, and CUDAHY,*
Circuit Judges.

(Filed: January 24, 2002)

David J. Armstrong, Esq. (Argued)
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222

_____

* The Honorable Richard Cudahy, Senior Circuit Judge of the United
States Court of Appeals for the Seventh Circuit, sitting by designation.

Michael P. Malakoff, Esq.
Malakoff Doyle & Finberg, P.C.
The Frick Building, Suite 200
Pittsburgh, PA 15219

 Counsel for Appellants

Allyn Z. Lite, Esq. (Argued)
Bruce D. Greenberg, Esq.
Lite DePalma Greenberg &
 Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102

Melvyn I. Weiss, Esq.
Barry A. Weprin, Esq.
Brad N. Friedman, Esq.
Milberg Weiss Bershad Hynes
 & Lerach LLP
One Pennsylvania Plaza, 48th Floor
New York, NY 10119

Reid L. Ashinoff, Esq.
Sonnenschein, Nath & Rosenthal
1221 Avenue of the Americas,
 24th Floor
New York, NY 10020

Michael B. Hyman, Esq.
Deborah S. Bussert, Esq.
Ellyn M. Lansing, Esq.
Much Shelist Freed Denenberg
 Ament Bell & Rubenstein, P.C.
200 North LaSalle Street, Suite 2100
Chicago, IL 60601

 Counsel for Appellees

Brian S. Wolfman, Esq.
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009

 Counsel for Amicus-Appellant,
Public Citizen, Inc.

2

OPINION OF THE COURT

McKEE, Circuit Judge:

This appeal arises from numerous state and federal class actions that the Judicial Panel on Multi-district Litigation consolidated for disposition in the United States District Court for the District of New Jersey. This massive, national class action involved the claims of over eight million policy holders of Prudential Life Insurance Company who were represented by many lawyers, including the appellant, Michael P. Malakoff and his law firm, Malakoff, Doyle and Finberg. The class action eventually reached a settlement. However, on the eve of settlement, Lead Counsel for the plaintiffs asked the court to sanction Malakoff based upon his conduct during the course of the litigation.

After issuing a rule to show cause on the motion for sanctions, the District Court referred the matter to a magistrate judge who issued a Report and Recommendation ("R and R") recommending rather severe disciplinary and monetary sanctions. The Chief Judge of the District Court then assigned Judge Walls to review the R and R. Judge Walls approved the R and R with modifications and directed the magistrate judge to recalculate the monetary sanctions according to the precise costs and expenses resulting from the sanctionable conduct. See In re The Prudential Insurance Co., 63 F. Supp. 2d 516 (D. N.J. 1999). This appeal followed imposition of the modified sanctions. For the reasons that follow, we will affirm in part and reverse in part.

I. Background.

In 1995, Michael P. Malakoff, a Pennsylvania attorney experienced in class action litigation, brought two statewide class actions against Prudential Insurance Company of America in Ohio and West Virginia state courts on behalf of Prudential policy holders in those states. Prudential removed those class actions to federal district court and Malakoff's subsequent motions to remand were denied. The

3

Judicial Panel on Multi-District Litigation centralized those and other class actions that had been brought on behalf of Prudential policy holders before Judge Alfred M. Wolin of the United States District Court for the District of New Jersey. The centralization order also appointed the law firms of Milberg, Weiss, Bershad, Hynes & Lerach of New York City and Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C. of Chicago as Lead Counsel in the national consolidated action. From the outset, Lead Counsel and Malakoff disagreed as to whether the actions should be litigated in statewide classes or as a national class. Malakoff argued that the two state class actions in which he was counsel should be litigated separately from the national class asserted by Lead Counsel.

The consolidated cases, from which Malakoff had successfully excluded his clients, were settled on a nationwide basis in late 1996, and Malakoff retained objector status in the nationwide action. On December 2, 1996, Malakoff filed an "emergency" motion to recuse Judge Wolin. A few days later, Lead Counsel filed a cross-motion for sanctions predicated primarily on Malakoff's recusal motion. Judge Wolin referred the sanctions motion to then Magistrate Judge Joel A. Pisano. Following Malakoff's voluminous objections to the proposed settlement, Lead Counsel supplemented their cross-motion for sanctions with citations to numerous other instances of Malakoff's alleged sanctionable conduct.

As proponent of the statewide claims for Ohio and West Virginia, Malakoff raised many objections to the proposed national class settlement, and to Lead Counsel's request for $90 million in attorneys' fees. In March, 1997, Malakoff filed his own motion to sanction Lead Counsel under 28 U.S.C. S 1927. Shortly thereafter, Malakoff filed an additional motion for sanctions, this time relying upon Fed. R. Civ. Proc. 11, but alleging the same conduct that formed the basis of his S 1927 motion. See A-2818, 3485. On March 17, 1997, Judge Wolin, in an exhaustive and carefully drafted opinion, approved the settlement. In re Prudential Sales Practice Litig., 962 F. Supp. 450 (D. N. J. 1997). Shortly thereafter, the District Court issued an order and opinion awarding attorneys' fees to Lead Counsel. 962 F. Supp. 572 (D. N. J. 1997).

4

We affirmed Judge Wolin's approval of the settlement on appeal, but vacated the attorneys' fee award and remanded for further consideration. See In Re Prudential Sales Practice Litig., 148 F.3d 283 (3d Cir. 1998). On remand, Lead Counsel moved for an interim fee award which Malakoff opposed. Lead Counsel also moved for sanctions against Malakoff based upon statements Malakoff made in his opposition documents. However, that request for sanctions was withdrawn within the "safe harbor" period.[1] See A-3192, 3485. Nonetheless, a week later Malakoff filed yet another motion against Lead Counsel under 28 U.S.C. S 1927. That motion was based on the sanctions that Lead Counsel had requested under Rule 11 even though that motion had been withdrawn. See A-3485(23).

Following the United States Supreme Court's denial of a petition for certiorari from our decision affirming the settlement,[2] Judge Wolin referred all motions for sanctions to Magistrate Judge Pisano. Judge Pisano issued an R and R recommending that sanctions be imposed against Malakoff. The sanctions included a compensatory payment of $100,000 to Lead Counsel under 28 U.S.C. S 1927, and a non-monetary requirement that Malakoff attach a copy of that R and R as well as a certification that he had paid the attorneys fees ordered therein, to all future motions for pro hac vice admission in the United States District Court for the District of New Jersey. See A-3485A(35).

Malakoff objected to the R and R. Judge Wolin recused himself, and the Chief Judge of the District Court assigned Malakoff's objections to Judge William H. Walls of the United States District Court for the District of New Jersey. Judge Walls substantially adopted Judge Pisano's report and rejected Malakoff's objection; however, Judge Walls remanded the recommendation for compensatory payment to Lead Counsel of $100,000 to Judge Pisano. The remand was for a determination of the precise amount of excess fees and expenses lead counsel incurred as a result of

_____

1. For a discussion of the 21 day "safe harbor" provision contained in Fed. R. Civ. P. 11 see Zuk v. Eastern Pennsylvania Psychiatric Institute, 103 F.3d 294 (3rd Cir. 1996).

2. 525 U.S. 1114 (1999).

Malakoff's sanctionable conduct. Judge Walls also reduced the time that Malakoff would have to attach the R and R and the aforementioned certification of compliance to subsequent motions for pro hac vice admission to five years from the date of the first motion for pro hac vice admission. On remand, Malakoff and Lead Counsel agreed that the compensatory sanction award be reduced to $50,000 if we uphold the sanctions on appeal. That modification was approved, and Malakoff filed this appeal.

We are only concerned with the propriety of the sanctions imposed by the District Court against Malakoff following the protracted and hard-fought consolidated class action proceedings. Malakoff contends that his conduct did not warrant monetary or disciplinary sanctions, and that sanctions were imposed without adequate notice or "opportunity to be heard."[3] Issues pertaining to the adequacy of Malakoff's "opportunity to be heard," are questions of law subject to plenary review. In Re Tutu Wells Contamination Litig., 120 F.3d 368, 383 (3d Cir. 1997). However, we review whether the facts warrant the imposition of monetary and disciplinary sanctions for an abuse of discretion. Accordingly, we will only reverse the District Court if the sanctions resulted from an unsupported finding of fact, an errant conclusion of law, or an improper application of law to fact. See In re: Orthopedic Bone Screw Prods. Litig., 193 F.3d 781,795 (3d Cir. 1999).

The District Court imposed sanctions pursuant to 28 U.S.C. S 1927, as well as its inherent power to control the course of litigation. Although we will discuss the legal principles underlying these sanctions in more detail below, it will be helpful to preliminarily set forth the underlying legal principles for imposing sanctions. We will then examine Malakoff's conduct to determine if the sanctions were appropriate here.

_____

3. Malakoff argues that he was denied the opportunity to be heard in opposition to the sanctions motion because of the District Court's denial of his discovery requests regarding submissions made after he filed his recusal motion. We have previously held that Malakoff was not entitled to more discovery. See Prudential Sales Practices Litig., 148 F.3d at 343-45.

In Hackman v. Valley Fair, 932 F.2d 239 (3rd Cir. 1991)
we noted that:

> a finding of willful bad faith on the part of the
> offending lawyer is a prerequisite . . . [for imposing
> sanctions under 28 U.S.C. S 1927]. Bad faith is a
> factual determination reviewable under the clearly
> erroneous standard. Once a finding of bad faith is
> made, the appropriateness of sanctions is a matter
> entrusted to the discretion of the district court.

932 F.2d at 242.

Similarly, an award of fees and costs pursuant to the
court's inherent authority to control litigation will usually
require a finding of bad faith.4 In Chambers v. NASCO, Inc.,
501 U.S. 32, 45-46 (1991) the Supreme Court stated that
a court has the inherent authority to impose sanctions
when an attorney has acted "in bad faith, vexatiously,
wantonly, or for oppressive reasons." We also review an
award of sanctions pursuant to the court's inherent powers
for an abuse of discretion. "[S]uch an abuse occurs when
the court's decision rests upon a clearly erroneous finding
of fact, an errant conclusion of law or an improper
application of law to fact." In Re: Orthopedic Bone Screw
Products Liability Litig., 193 F.3d 781, 795 (3rd Cir. 1999)
(internal quotation marks omitted).

II. Malakoff's Conduct.

Judge Walls rested the S 1927 sanctions upon the
following conduct: (1) Malakoff's motion to recuse Judge
Wolin; (2) Malakoff's criticism of the fee examiner; (3)

_____

4. We state that a finding of bad faith is "usually" required under the
court's inherent powers because we noted in Republic of Philippines v.
Westinghouse Electric Corp., 43 F.3d 65, 74 n.11 that such sanctions do
not always require a showing of bad faith. Thus, in Martin v. Brown, we
were careful to note that "[u]sually the inherent power that a district
court retains to sanction attorneys also requires a finding of bad faith."
63 F.3d 1252 at 1265 (emphasis added). We need not dwell on when, if
at all, a court may impose such sanctions without first finding bad faith
because, as we discuss below, the district court here implicitly made
such a finding, and that finding was not clearly erroneous.

Malakoff's releasing recusal motion papers to the press; (4) affidavits Malakoff filed in March of 1997; (5) Malakoff's demand for a "keyword" search of discovery documents provided by Prudential as well as a demand that Class Counsel provide him with charts summarizing evidence to be used at the fairness hearing; and (6) sanctions motions Malakoff filed under Rule 11 and S 1927. We will examine each of these in turn.

(1). The Motion to Recuse.

Malakoff filed a motion to recuse as an emergency motion on December 2, 1996. He alleged that Judge Wolin had improper ex parte communications with various people involved in the nationwide litigation, that Judge Wolin obstructed reasonable access to documents related to the fairness of the settlement and that Judge Wolin had shown partiality towards Prudential and towards the fairness of the settlement. App. at 833-859.

Malakoff rested the motion primarily upon the charge that Judge Wolin had improper ex parte meetings with Prudential's President and counsel on August 12, 1996 at a settlement conference, and an October 16, 1996, on the record conference with certain state insurance regulators. Finally, Malakoff alleged that Judge Wolin had improperly attempted to influence a state court trial judge in a Pennsylvania state court case.

Prudential and Class Counsel opposed the recusal motion. Judge Wolin set an expedited schedule for responses and scheduled a hearing on the motion for December 13, 1996. However, when Prudential and Class Counsel voiced their opposition, Malakoff demanded a delay of twenty days to reply. The District Court denied that request and held the hearing as scheduled. Judge Wolin denied the recusal motion after that hearing and argument on the motion. Malakoff then petitioned for a writ of mandamus which we denied. His mandamus papers reiterated the same arguments that we had rejected on appeal from the approval of the class settlement and fairness hearing. See 148 F.3d at 342-34.

8

In sanctioning Malakoff under S 1927, Judge Walls rejected Malakoff's contention that the recusal motion had a colorable basis in fact and was not filed in bad faith. Rather, Judge Walls concluded that "Malakoff intentionally filed an unreasonable recusal motion." 63 F. Supp. 2d at 520. In his appeal to us, Malakoff has dropped most of the charges he had previously based his recusal motion on, including his charge that Judge Wolin had improper ex parte settlement communications with Prudential's President and counsel.5 Instead, he asserts that the following three bases for recusal demonstrate that his motion for recusal had a colorable basis and was not filed in bad faith.

First, Malakoff alleges that Judge Wolin attempted to intervene on Prudential's behalf in a Pennsylvania state court case called Rutt v. Prudential. According to Malakoff, in a hearing in that case before the state court trial judge, Prudential's counsel, Hirshman, argued for the disqualification of a lawyer named Miller who represented the Rutts. According to Malakoff, Hirshman told the state trial judge that Judge Wolin had information for the court regarding Miller and that Judge Wolin "is receptive to a discussion with Your Honor by telephone about his views." Malakoff's Br. at 13. Malakoff alleges that Hirsham told the state judge that Judge Wolin had "information to share" and suggested that the state judge call Judge Wolin. Id. at 13–14. The state court trial judge purportedly declined Hirshman's invitation, saying that it would be "highly improper" for him to contact Judge Wolin. Id . at 14.

_____

5. The District Court correctly noted, "the Manual for Complex Litigation acknowledges that federal judges may meet separately with parties for confidential settlement conferences. Finally, the Code of Judicial Conduct for United States Judges permits separate conversations with parties with the consent of counsel who are authorized to object. This Court concludes that any reasonable attorney would have understood that Judge Wolin could permissibly engage in ex parte communication in a complex class action such as In re Prudential." 63 F. Supp.2d at 520.

The district court found that Malakoff waived entitlement to notice of, and opportunity to object to, such meetings because he had consented to ex parte communications relating to settlement long before he filed the recusal motion. Id.

9

According to Malakoff, the whole purpose of this contact with the state judge was delaying the trial of the Rutt case until after the nationwide settlement was approved.

At the recusal hearing, Judge Wolin stated that he would have spoken to the state judge "as a matter of courtesy," however, he categorically denied knowing the state judge ever attempting to contact him, or even caring about the outcome of the Rutt case. App. at 891-92. Nothing on this record contradicts Judge Wolin's assertion. To the contrary, Malakoff's own brief now belies his charge that Judge Wolin attempted to intervene, and affirms that what actually happened was "that Prudential attorneys urged [the state trial judge] to contact Judge Wolin." Malakoff's Br. at 38. Therefore, Malakoff's charge was not based on anything Judge Wolin said or did. Rather, it was based upon something Prudential's counsel tried to get the state trial court judge to do. When Malakoff leveled this allegation of bias in his merits appeal we stated:"[t]here is no basis for believing the District Court was attempting to influence the state court proceedings in Rutt . . . [and Malakoff's claims to the contrary] are clearly without merit." 148 F.3d at 345.

Malakoff also alleged that Judge Wolin ought to be recused because the judge had an improper ex parte communication with David Gross. Gross' client was a former Prudential employee named David Fastenberg, and Fastenberg had been accused of destroying documents relevant to the Prudential litigation. Malakoff based this allegation of Judge Wolin's impropriety upon a statement Judge Wolin made at an October 16, 1996 hearing. During the course of that hearing, Judge Wolin stated that "Fastenberg's own lawyers say there was no document destruction." Malakoff's Br. at 15. Malakoff alleged that this purportedly improper communication on a matter concerning destruction of material and disputed documents, demonstrates Judge Wolin's favoring of Prudential.

However, Prudential had fired Fastenberg for allegedly allowing the destruction of documents in offices he supervised, and Fastenberg responded by suing Prudential for wrongful determination. The alleged document

10

destruction was a matter of public record. Moreover, Fastenberg's termination and his suit against Prudential had been widely reported in the press. Judge Wolin explained to Malakoff at the recusal hearing that he learned of Fastenberg's denial in the press and through a letter written to him by Lead Counsel for Prudential in a related case. Nothing on this record contradicts that. There was no improper communication by Judge Wolin with Fastenberg's lawyer. In fact, there was no communication at all.

Furthermore, Malakoff should have readily dismissed any suggestion that Judge Wolin favored Prudential when Judge Wolin directed Class Counsel to conduct an accelerated investigation of document destruction allegations. On January 6, 1997 Judge Wolin fined Prudential $1,000,000 for destroying documents. In re Prudential Ins. Co. of America Sales Practices Litig., 169 F. R. D. 598 (D. N. J. 1997). Yet, Malakoff persists in this accusation to this very day.

Malakoff's third reason for insisting that his recusal motion had a colorable basis and was not filed in bad faith is his charge that Judge Wolin had an October 16, 1996 on the record conference with state insurance regulators during which Judge Wolin indicated that he favored a national settlement of the policyholders' claims against Prudential. In Malakoff's view, the court's indication that it favored a settlement showed that it was partial to Prudential and could not, therefore, be an impartial, objective reviewer of the settlement. Malakoff rests this claim upon the following statement of Judge Wolin at the October 16 hearing:

> I'd like to be on the same page with you, realizing that we all have the same constituency. When I say `constituency,' I'm talking about the claimants, the 10.7 million people who are policyholders of Prudential . . . . Because I think that our goals have to be the same: we want to eliminate confusion, we want to make sure that claimants are . . . remediated properly.

Malakoff's Br. at 41. Judge Wolin also referred to the proposed settlement as "my settlement" and said "although I wasn't in all of the negotiations, I wasn't just a pretty

11

face." Id. at 42. However, nothing suggests that these remarks have the significance that Malakoff attempts to attach to them. Moreover, Malakoff does not bother to mention that Judge Wolin was careful to add the following caveat at the end of the October conference:

> No one should leave here today thinking that Judge Wolin's silence, Judge Wolin's nod, a smile at a particular time, means that he will approve this settlement. I don't have the slightest idea. I don't know who the objectors are, I haven't heard any evidence.

App. at 603. Moreover, we have already rejected the "spin" Malakoff's recusal motion sought to put on those statements. Malakoff made the same argument regarding these remarks on appeal from the fairness hearing. We stated that the "allegation [of impropriety] has no merit." 148 F.3d at 344.

(2). Criticism of the Fee Examiner.

On November 6, 1996, the District Court appointed Stephen M. Greenberg, Esq., as a Fee Examiner to "review the application for attorneys' fees and expenses" for Class Counsel. App. at 677. According to Prudential, that appointment was made after consultation with Class Counsel and Prudential and after those counsel had met with Greenberg. Malakoff received a copy of the Order appointing Greenberg and on November 15, 1996, Malakoff wrote a letter to Greenberg introducing himself. Significantly, Malakoff did not object to the fact or the manner of Greenberg's appointment in that letter.

However, two months later, Malakoff filed an emergency motion seeking to have Greenberg's appointment vacated. Malakoff alleged that Greenberg's appointment had been ex parte and in violation of Fed. R. Civ. P. 53(d)(1), because the first meeting of the parties and their attorneys was not held within 20 days of the order appointing the examiner.[6]

_____

6. Fed. R. Civ. P. 53(d)(1) requires the fee examiner to conduct a "first meeting of the parties or their attorneys to be held within 20 days after the order [appointing the examiner] and notify the parties or their attorneys." Malakoff says that when he requested that the district court enforce Rule 53 and direct the fee examiner to hold the meeting, the district court replied, "It's not a perfect world, is it Mr. Malakoff?"

12

Judge Wolin denied Malakoff's motion to vacate Greenberg's appointment. The judge found that Malakoff had waived his right to object by (1) not objecting at the time Greenberg was appointed; (2) writing to Greenberg nine days after Greenberg was appointed proposing that they collaborate in efforts to obtain materials related to the application for attorneys' fees; (3) waiting two months before seeking to vacate Greenberg's appointment, and (4) failing to provide any reason for waiting those two months. App. at 2501(4). Judge Wolin also found that Malakoff's Rule 53 objections were "hyper-technical" since "Greenberg met with the parties five days prior to the date of the November order and 27 days after the date of the November order." Id. at 2501(1)-2504(14)(a)).

In his "sanctions opinion," Judge Walls concluded that Malakoff had no basis for trying to vacate Greenberg's appointment because Malakoff had initially approved Greenberg's appointment. 63 F. Supp.2d at 521. Moreover, Judge Walls agreed that Malakoff's Rule 53 argument was "hyper-technical." Id.

(3). Release of Motion to Recuse to the Press.

Judge Walls accepted Magistrate Judge Pisano's consideration of Malakoff's failure to provide Judge Wolin with courtesy copies of motion papers in imposing sanctions. Judge Walls noted that:

> Magistrate Judge Pisano indicates that Mr. Malakoff repeatedly failed to send courtesy copies of motion papers to Judge Wolin's chambers. This deficiency was specifically addressed by Judge Wolin in Mr. Malakoff's December 13, 1996 motion to recuse.

In re: The Prudential Insurance Co., 63 F. Supp. 2d at 522.

Malakoff submits that Judge Walls found that his failure to provide courtesy copies of his various motions to Judge Wolin was sanctionable conduct. He contends he did not provide courtesy copies because, until that time, he had always filed his motions in accordance with local rules and Judge Wolin never had objected to that practice. Under local rules, the clerk of court forwards filings to the

13

assigned judge. According to Malakoff, it was only at the end of the recusal hearing that Judge Wolin chastised him for not providing the courtesy copies of filings. Malakoff asserts that Judge Walls was therefore wrong in finding that his failure to provide courtesy copies was sanctionable.

However, Judge Walls did not consider Malakoff's general failure to provide courtesy copies to Judge Wolin in imposing sanctions. Rather, Judge Walls considered Malakoff's release of his recusal motion to the press without first providing a copy to Judge Wolin.

At the recusal hearing, Judge Wolin expressly found that "copies of the Malakoff motion were submitted or leaked to the press in advance of their receipt by the Court. At least three major newspapers sought comment from this Court as to applications, the existence of which the Court was unaware." App. at 1492. Malakoff claims that several days after he filed the motion to recuse, he was contacted by the press and provided copies to them. Thus, because he complied with the rules of court and because the press initiated the contact, he insists that this conduct was not sanctionable. But, Judge Walls found otherwise. He concluded: "as an experienced attorney, [Malakoff] should have realized that the clerk's office would not deliver courtesy copies to chambers immediately. [Malakoff's] failure to accord Judge Wolin the same respect as the media was `unacceptable' and indicates that he acted in bad faith." 63 F. Supp.2d at 522.

(4). The March 1997 Affidavits.

In December of 1996, Judge Wolin held a hearing to address accusations that Prudential had destroyed documents related to the class action. Malakoff was not in court that day, but he maintains that his associate, David Snyder, was. Nonetheless, on January 13, 1997, Malakoff filed his "Tenth Affidavit," alleging that an improper ex parte communication occurred on December 30, 1996 between Judge Wolin, Karen Suter, Deputy Attorney General for the New Jersey Department of Banking, and Anita Kartalopolous, Deputy Commissioner for that Department. Subsequent to the filing of Malakoff's "Tenth

14

Affidavit," Suter and Kartalopolous filed affidavits denying any improper ex parte discussion with Judge Wolin. In fact, in those affidavits, both women said they asked the courtroom clerk if there was an attorney conference room where they could make a phone call to the Banking Commissioner. According to those sworn affidavits, a courtroom deputy told them none was available. However, Judge Wolin overheard that conversation and offered the use of one of the phones in his library conference room. That was the extent of their conversation with Judge Wolin.

However, despite the affidavits from Suter and Kartalopolous, Malakoff filed a "Corrected Tenth Affidavit," on February 17, 1997, which was identical to the "Tenth Affidavit" except that it changed, without explanation, the date of the alleged ex parte communication from December 30th to December 16. Then, on March 14, 1997, Malakoff filed his "Twenty Third Affidavit," in which he once again alleged that an improper ex parte discussion occurred on December 16, between Judge Wolin, Suter and Kartalopolous. Three days later, Malakoff filed his "Twenty Fourth Affidavit," in which he repeatedly accused Judge Wolin of catering to the interests of Prudential and Class Counsel.

Judge Walls found that the 23rd and 24th affidavits merely restated already rejected arguments, attempted to explain Malakoff's reasons for filing motions that had already been denied, and repeated allegations of Judge Wolin's impropriety that Malakoff had made in his recusal motion. Judge Walls also found that the 24th affidavit was not filed in connection with any new or pending motion. Consequently, Judge Walls concluded that Malakoff filed the 23rd and 24th affidavits for the sole purpose of embarrassing Judge Wolin. 63 F. Supp.2d at 522.

(5). Discovery Matters.

Judge Walls considered two instances of Malakoff's conduct over discovery materials in sanctioning Malakoff.

The first involved Malakoff's demand for a "keyword" search of documents produced during discovery. On October 28, 1996, Class Counsel and Prudential received

15

Judge Wolin's order conditionally approving the settlement of the consolidated class action. Judge Wolin made available to all policyholders who signed a Stipulation of Confidentiality "deposition transcripts and attached exhibits as well as . . . all other documents generated in this lawsuit."

According to Class Counsel, over 1,000,000 pages of documents, 160 computer diskettes, 500 audio and video tapes, hundreds of interviews with current and former Prudential employees, twenty depositions, plus all of the documents that Prudential had produced to the Multi-State Task Force was then available. Numerous lawyers for policyholders apparently reviewed the documents in three document depositories around the country that Class Counsel had established for that purpose. According to Class Counsel, Malakoff indicated in early November 1996 that he intended to review the documents and Class Counsel sent him copies of their own indices to the documents to assist with that review. However, Malakoff did not review the materials. Rather, he demanded additional discovery despite not having reviewed the discovery material already available. On December 30, 1996, after Malakoff complained about not being able to review the documents, Judge Wolin suggested that he go to Class Counsel's offices in New York for document review. Malakoff maintains that he asked Judge Wolin to direct Class Counsel to allow him (Malakoff) to use the class keyword search facility because only a few of the many documents were relevant to Malakoff's objections. Judge Wolin denied that request as unfair, and Malakoff sent an associate to Class Counsel's office. However, the associate only demanded that Class Counsel conduct keyword searches for him. He did not review any discovery material.

The second set of circumstances involving discovery that Judge Walls considered concerned Malakoff's demand for "charts" summarizing evidence. On January 28, 1997, Judge Wolin entered an order permitting Class Counsel to use demonstrative evidence at the fairness hearing, and requiring Class Counsel to provide an adequate opportunity for any interested party to inspect the demonstrative evidence at Class Counsel's New York office. Judge Wolin's

16

order specified, however, that the "opportunity for such inspection does not create any obligation [on Class Counsel] to provide any copies of such demonstrative evidence to any person inspecting the same."

Malakoff asserts that it was not feasible for him to review this demonstrative evidence in New York, and he therefore requested that Prudential and Class Counsel fax copies of the charts to him. According to Malakoff, Prudential complied with his request, but Class Counsel refused and demanded that he go to New York to review the charts. Rather than doing that, Malakoff filed yet another "emergency" motion on February 19, 1997. Judge Wolin denied that motion finding, among other things, that Malakoff had not shown why compliance with the previous order allowing inspection was not feasible. Judge Wolin was also concerned that Malakoff waited until the eleventh hour to raise the issue (the fairness hearing was set for February 24, 1997).

Judge Walls considered these actions and wrote:

> Mr. Malakoff's actions demonstrate a failure on his part to abide with the discovery process agreed to by counsel and the Court in this action. That no other attorney objected to the process or sought specific concessions from the court or opposing counsel demonstrates that the procedure was unobjectionable. Mr. Malakoff's resistance to the discovery process and his attempts to exempt himself therefrom unreasonably multiplied the straightforward discovery process and delayed the ultimate settlement of the case.

63 F. Supp.2d at 522.

(6). Filing Rule 11 and S 1927 Sanctions Motions.

As noted, when Malakoff filed his recusal motion, Class Counsel cross-moved for sanctions against Malakoff under S 1927, and then, on the same day as the fairness hearing, supplemented their cross-motion for sanctions. In response, Malakoff filed his own motion for sanctions against Class Counsel under S 1927, and shortly thereafter, he served a motion for sanctions against Class Counsel

17

under Fed. R. Civ. P. 11 based upon Class Counsel's sanctions motion.

Malakoff's S 1927 motion consisted entirely of his defenses to Class Counsel's sanctions motion. In his R and R, Magistrate Judge Pisano concluded that Malakoff's S 1927 motion "fails mightily to show why the court should sanction Class Counsel." R&R at 31. Magistrate Judge Pisano also concluded that Malakoff's Rule 11 motion was absolutely identical to his S 1927 sanctions motion. Judge Walls held that both motions were only defenses to Class Counsel's S 1927 motion and did "not advance a coherent legal argument as to why [Class Counsel] should be sanctioned." 63 F. Supp.2d at 523. Inasmuch as Malakoff conceded that the legal standards for S 1927 and Rule 11 are different, Judge Walls concluded that these duplicitous motions demonstrated that Malakoff had abused the sanctions process.7 Id. Judge Walls concluded that Malakoff's "identical motions were baseless and filed in bad faith." Id.

III. Sanctions Under 18 U.S.C. S 1927.

As noted above, the monetary sanctions here were imposed pursuant to 28 U.S.C. S 1927. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. S 1927. "Although a trial court has broad

---

7. For example, S 1927 sanctions are applicable only to an attorney and requires a finding of bad faith. Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1191 (3d Cir. 1989). Rule 11 authorizes sanctions against a signer of a pleading, etc. presented for an improper purpose and requires only a showing of objectively unreasonable conduct. Fellheimer, Eichen & Braverman v. Charter Technologies, Inc., 57 F.3d 1215, 1225 (3d Cir. 1995).

discretion in managing litigation before it, the principal purpose of imposing sanctions under 28 U.S.C. S 1927 is the deterrence of intentional and unnecessary delay in the proceedings." Zuk v. Eastern Pennsylvania Psychiatric Institute, 103 F.3d 294, 297 (3d Cir. 1996) (citation and internal quotations omitted).

As is evident from the text of the statute, S 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct. Williams v Giant Eagle Markets, Inc. 883 F.2d 1184, 1191 (3rd Cir. 1989). "[B]efore a court can order the imposition of attorneys' fees under S 1927, it must find willful bad faith on the part of the offending attorney." Zuk, 103 F.3d at 297. "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. of Teachers, AFL-CIO , 829 F.2d 1370, 1375 (6th Cir. 1987). Inasmuch as S 1927 addresses the impact conduct has on the proceedings, sanctions that are imposed under S 1927 must only impose costs and expenses that result from the particular misconduct. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995). Moreover, these costs and expenses are limited to those that could be taxed under 28 U.S.C. S 1920. Id.

IV. Sanctions Pursuant to the Court's Inherent Power.

In addition to the monetary sanctions imposed under S 1927, the District Court also imposed disciplinary sanctions. These sanctions required Malakoff to certify that he had paid the monetary fine, and attach a copy of the R and R to all applications for admission pro hac vice for five years from the date of the first such application. This sanction was imposed under the court's inherent power. Moreover, the sanctioning order also provided that, if Malakoff were to be sanctioned again within the five year period, the five year limitation would disappear and he would thereafter be required to submit the proof of payment, together with a copy of the R and R, with every

19

application for pro hac vice admission to the District Court for as long as he practiced law. In re Prudential Ins. Co. of Am. Sales Prac. Litig., 63 F. Supp. 516, 525 (D. N.J. 1999).

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Fellheimer, Eichen & Braverman, P. C., v. Charter Technologies, Inc., 57 F.3d 1215, 1224 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)(internal brackets and citations omitted))."Among the implied and incidental powers of a federal court is the power to discipline attorneys who appear before it." Id. (quoting Chambers, at 43).

Circumstances that may justify sanctions pursuant to a court's inherent power include

> cases where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . . The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy. Id.

(quoting Chambers, at 45-46).

A court may resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court. Chambers, at 45. However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and caution." Chambers, at 44; see also Eash v. Riggins Trucking, Inc., 757 F.2d 557, 562 (3d Cir. 1985)(en banc). Although a court retains the inherent right to sanction when rules of court or statutes also provide a vehicle for sanctioning misconduct, resort to these inherent powers is not preferred when other remedies are available. Moreover, the analysis in Chambers "leads to the conclusion that if statutory or rules-based sanctions are entirely adequate,

20

they should be invoked, rather than the inherent power."
Gregory P. Joseph, Sanctions: The Federal Law of Litigation
Abuse, 428 (3rd ed. 1999) (hereinafter Sanctions Treatise).
Therefore, "[g]enerally, a court's inherent power should be
reserved for those cases in which the conduct of a party or
an attorney is egregious and no other basis for sanctions
exists." Martin v. Brown, 63 F.3d at 1265.

V. The Court did not Abuse its Discretion in Imposing
        Sanctions Under S 1927

As we stated at the outset, sanctions under S 1927 or the
court's inherent power may not be made in the absence of
a finding of bad faith. However, that finding need not be
explicit. An implicit finding of bad faith will support
sanctions just as well so long as it is not an abuse of
discretion, not based upon clearly erroneous factual
findings, and not based upon an error of law. Baker
Industries at 209.

Here, Judge Walls did not make an express finding of bad
faith. Nor did Judge Walls rely upon any of the above-
specified conduct in particular. Rather, he based his finding
of the requisite bad faith and vexatious conduct on the
totality of the campaign Malakoff waged during the course
of this litigation, not upon any single maneuver. The
District Court assessed that conduct in its totality in
imposing sanctions and affirming the findings of the
Magistrate Judge. In his R and R, the Magistrate Judge
explained:

>     [w]hen viewed individually, each single instance of
>     misbehavior by Mr. Malakoff might not warrant the
>     sanctions arrived at by the court. But considered as a
>     whole, his transgressions evidence a pattern of
>     obfuscation and mean spiritedness. Thankfully, it is
>     not often that the Court encounters such behavior, and
>     the undersigned is completely satisfied that, under
>     disciplinary rubric, Mr. Malakoff's conduct warrants
>     stern sanctions.

R&R at 25 (emphasis added). Moreover, the District Court
specifically cited this finding in affirming the sanctions. See
In Re Prudential 63 F. Supp. 2d at 521 ("The Magistrate

21

Judge concluded that Mr. Malakoff `abused the privileges of practicing before this Court. His behavior since his arrival on the scene in this litigation has been deplorable. Examples of this conduct are numerous and . . .[not] a one-time lapse in judgment.' The Court thus found that `considered as a whole, his transgressions evidence a pattern of obfuscation and mean spiritedness.' ").

Judge Walls noted that Malakoff "began bombard[ing] the Court with paper soon after the transfers." In Re Prudential Insurance Co., 63 F. Supp 2d at 518. This record readily discloses implicit findings of bad faith, and those findings were not clearly erroneous.

> The district court's finding of willfulness on [Malakoff's] part, as a finding of fact, is subject to reversal only if clearly erroneous. This standard requires us to pay deference to the district court's interpretation of the factual record before it. Once such a finding is made, the appropriateness of assessing attorneys' fees against counsel under section 1927 is a matter for the district court's discretion.

Baker Industries, 764 F.2d at 209-10 (citations omitted). Accordingly, we do not second-guess the District Court that was managing the front lines of this massive class action unless its findings were clearly erroneous or its exercise of decision arbitrary or unjustified.

The course of conduct here allows for only one conclusion, and it is the one reached by the Magistrate Judge and District Court. We can not conclude that the District Court's finding that Malakoff litigated in a vexatious manner and in bad faith was clearly erroneous. He multiplied the proceedings at nearly every turn, and increased the cost of this litigation accordingly. His baseless recusal motion required responses by Class Counsel and a hearing by Judge Wolin. His emergency motion to vacate the fee examiner's appointment, an appointment that he originally approved, also necessitated responses by Class Counsel and required Judge Wolin to write a thirteen page opinion in support of his order denying the motion. His demand for a key word search (after he failed to make any efforts to review the documents

22

available at Class Counsel's New York Office) meant that Judge Wolin had to address that demand at a case management conference held to discuss the proposed settlement hearing. Malakoff's emergency motion demanding that Class Counsel fax charts summarizing the evidence to be used at the fairness hearing once again necessitated responses by Class Counsel and once again meant that Judge Wolin had to write an opinion and order denying that motion. His filing of two identical sanctions motions, despite the fact that they were filed under different provisions having different standards of proof, necessitated responses by Class Counsel and an examination and analysis by Magistrate Judge Pisano. Finally, even though his March 1997 affidavit may not have required the use of judicial resources, the subjects of those affidavits, viz., New Jersey Deputy Attorney General Suter and New Jersey Deputy Insurance Commissioner Kartalopolous, felt compelled to respond to the erroneous allegations Malakoff made in the affidavit of improper ex parte discussions with Judge Wolin.

The sanctions that were imposed were a direct result of that vexatious conduct and not an abuse of discretion. The only real question with regard to those sanctions is whether Malakoff was properly afforded due process before the sanctions was imposed. Although we believe Malakoff was afforded due process as to the additional costs and fees taxed against him under S 1927, we are troubled by the absence of particularized notice of sanctions imposed under the court's inherent powers.

VI. Due Process Requirements.

"The Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a[n] . . . attorney." Martin v. Brown, at 1262. We have held that "particularized notice is required to comport with due process." Fellheimer, at 1225. "Generally speaking, particularized notice will usually require notice of the precise sanctioning tool that the court intends to employ." Id. An opportunity to be heard is "especially important" where a lawyer or firm's "reputation is at stake," because

23

sanctions "act as a symbolic statement about the quality and integrity of an attorney's work -- a statement which may have a tangible effect upon the attorney's career." Id. at 1227.

Here, Malakoff did receive notice in the form of the motion for sanctions that Lead Counsel filed on December 10, 1996. Moreover, on December 10, 1996, plaintiff's liaison counsel, co-lead counsel and executive counsel gave Malakoff written notice that on December 13, 1996, they would cross-move before Judge Wolin for an order pursuant to 28 U.S.C. S 1927 to impose sanctions. However, that notice informed Malakoff that sanctions would be sought

> upon the firm of Malakoff, Doyle & Finley, P.C., for unreasonably and vexatiously multiplying the proceedings in this matter, and seeking payment by Malakoff, Doyle & Finley, P.C. of the excess costs, expenses and attorneys' fees reasonably incurred to respond to the application of Kittle and Krell to disqualify the judge in this matter."

The notice only referred to sanctions under 28 U.S.C. S 1927, and made no mention of sanctioning Malakoff under the court's inherent powers. The supporting affidavits of attorney Allyn Z. Lite and Brad N. Friedman also referred only to sanctions under 28 U.S.C.S 1927 without any reference to the court sanctioning Malakoff under its inherent powers.

In upholding the Magistrate Judge's determination that Malakoff had not been denied due process, Judge Walls cited to page 24 of the R and R. See 63 F. Supp 2d at 523. There, the Magistrate judge stated:

> In the sanctions matters currently before the Court, all parties were given ample notice of what behavior was in dispute. Each side's motion papers and affidavits set forth in detail why it believes actions taken by the other party's attorneys should result in sanctions. Furthermore, the questions posed at oral argument afforded to the parties an inkling of the Court's concerns about what behavior might be objectionable. Finally, each party was able to listen at oral argument

24

to the concerns voiced by the other. Surely, each side was on particularized notice of what behavior and actions were at issue.

Class Counsel and Mr. Malakoff were also given at least four opportunities to be heard. First, both sides presented legal arguments in their numerous and lengthy briefs and memoranda accompanying the various sanctions motions. Second, Mr. Malakoff and Class Counsel both sent to the Court letter memoranda accompanying their submissions regarding the sanctions record. Third, at oral argument, each side was given time for a presentation to the Court, and additional time for rebuttal. Finally, at the end of oral argument, the Court advised the parties that it would entertain one final letter memorandum from each side, so long as each was no longer than five pages. Both took advantage of all four of these opportunities to present arguments to the Court. Certainly, the parties have been given meaningful and numerous opportunities to be heard.

R&R. at 23-24. We agree as to the statutory sanctions.

This record clearly establishes that the sanctions that were imposed under S 1927 satisfied due process requirements.8 However, as we suggest above, we are

_____

8. Malakoff argues that the District Court deprived him of due process by refusing discovery regarding record submissions after he filed his recusal motions. He argues that those submissions were used to deny the recusal motion and to justify the award of sanctions against him. Yet, Malakoff chose to demarcate his recusal motion as an"emergency" motion. In denying discovery, the court merely treated Malakoff's motion like the emergency he himself declared it to be, and afforded it the immediate attention Malakoff's assertion of"emergency" demanded. He now seeks to use the court's prompt handling of his"emergency" to argue that the court denied him due process by not granting a month long continuance to take discovery to establish that the emergency he had alleged did in fact exist.

Malakoff's claim of denial of due process as to his "emergency" motion thus reduces to a claim that without discovery he was denied an opportunity to develop a full and complete sanction record. Malakoff's Br. at 54. However, he never explains why this is so, and we doubt that any explanation is possible given the District Court's finding of bad faith.

troubled by the propriety of the non-monetary sanctions imposed pursuant to the court's inherent powers.

VII. Sanctions Under the Court's Inherent Powers and Conditions on Pro Hac Vice Admission.

Malakoff does not challenge the court's authority to impose the aforementioned conditions on his applications for pro hac vice admission in the District Court of New Jersey. He does, however, argue that he was denied notice and an opportunity to be heard as to those sanctions. He claims that he first became aware that the Magistrate Judge was considering requiring him to attach this "scarlet letter" (our term, not Malakoff's) to his pro hac vice applications only upon reading the July 15, 1999, R and R. Class Counsel argues to the contrary and insists that Malakoff had ample notice. According to Class Counsel, the issue was raised by Class Counsel at oral argument during the sanctions hearing and again in their post-argument brief.

The Magistrate Judge found that Malakoff was given four opportunities to be heard on the sanctions that were being considered. See R&R at 24. Judge Walls found that Malakoff received particularized notice in the original S 1927 sanctions motion filed in December of 1996. He also found that "[a] survey of the competing sanctions motions filed over the course of the Prudential litigation further indicates that Mr. Malakoff was on notice to the particular factors that he had to address if he were to avoid sanctions." 63 F. Supp.2d at 524 (internal quotations omitted).

However, the sanction pertaining to pro hac vice admissions is substantially more severe than the sanction imposed under S 1927 because it more directly impacts Malakoff's ability to practice. It is also at least arguably more damaging to his reputation and that of his firm.9 Moreover, although Malakoff was clearly on notice that the

_____

9. There is, no doubt, more than a grain of truth in Shakespeare's familiar pronouncement: "he that filches from me my good name . . . makes me poor indeed. . .". Othello; Act 3, Scene3.

26

court was empowered to make him pay for the increase in cost resulting from his vexatious conduct and that Lead Counsel would request those costs, it is not as clear that Malakoff had notice that the court was considering requiring him to attach his scarlet letter to his pro hace vice admissions in the District of New Jersey.

The Magistrate Judge explained this sanction as follows:

> In addition to the monetary sanction for hisS 1927 violations, Mr. Malakoff should be required to answer to the Court for his conduct. One would have hoped for an apology but none was offered. And having read his numerous submissions, having observed his demeanor at oral argument, and having evaluated his concept of professional responsibility, the Court is not satisfied that even a forced apology would have any impact on Mr. Malakoff.
>
> Therefore, and pursuant to its inherent power, the Court recommends that, prior to Mr. Malakoff's applying for pro hac vice admission in any subsequent litigation in this district, he be required to attach to the motion papers supporting his admission (1) a certification that he has paid the monetary sanction ordered herein, and (2) a copy of this R and R.

R&R at 35.

We do not believe that the notice Malakoff received in connection with the motion for sanctions under S 1927 afforded the kind of "particularized" notice and opportunity to defend against this unique sanction that due process requires.

In concluding that Malakoff did not have adequate notice of this sanction we are particularly mindful of the impact that such a sanction would no doubt have on Malakoff's ability to practice his trade. Although the sanction is not a suspension from practice per se, it certainly raises similar concerns, and those concerns ought to inform the particularity of notice that must be given to allow Malakoff to properly defend against such a sanction. See In re: Tutu Wells, 120 F.3d at 381 n.10.("Any suspension from practice [and to a lesser degree, severe disciplinary impediments

27

pertaining to admission to practice], even in a jurisdiction in which an attorney does not regularly practice, would leave an indelible and deleterious imprint on the attorney's career, reputation, and future opportunities."). We do not believe that the notice afforded Malakoff was sufficient to allow the court to impose the non-monetary sanctions that were imposed under the court's inherent power. Accordingly, that order will be reversed.

CONCLUSION

For the reasons set forth above, the order of the District Court will be affirmed insofar as it imposes sanctions under 18 U.S.C. S 1927 requiring Malakoff to pay the increase in costs and fees resulting from his conduct. However, the order is reversed insofar as it imposes conditions on his pro hac vice applications under the court's inherent powers.

In affirming these sanctions we merely conclude that, inasmuch as the district court's finding of bad faith was not clearly erroneous, we do not think that the monetary sanctions were an abuse of discretion. However, nothing we say is intended to detract from the important role of objectors' counsel that Judge Rosenn so eloquently notes in his concurring/dissenting opinion. See Concurring/dissenting Op. at 43. Nor do we in any way intend to suggest that forceful advocacy ought to invite sanctions in the absence of bad faith, and vexatious conduct that unduly increases the costs and burdens of litigation.

28

ROSENN, Circuit Judge, concurring and dissenting:

I concur and join in Part VII of the majority's decision that the judgment of the District Court be reversed with respect to the sanctions imposed under the court's inherent power. Because the evidence does not show that Malakoff's actions vexatiously and unreasonably prolonged the litigation in violation of 28 U.S.C. S 1927 and there is no evidence of or findings that he acted in wilful bad faith, the sanctions under that statute also should be reversed. I therefore respectfully dissent from the imposition of any sanctions.

I.

Because of the many lawyers involved and their adversarial interests, the underlying case was destined to sail on stormy waters. Despite some tensions and occasional aberrations in civility, but with considerable judicial patience and skill, the case had reached a point for settlement consideration. Regrettably, as later resulting proceedings revealed, because of a lack of precise information and a misreading of the sense and scope of some of the ex parte conferences, Malakoff filed a motion for Judge Wolin's recusal. Until that moment, no motion, complaints, or judicial warnings had been even addressed to Malakoff. His motion triggered sanction proceedings which are now the aftermath of lengthy underlying litigation which has long been settled, appealed, and closed.

Malakoff substantively challenges the monetary sanctions on the ground that he always acted in this litigation in good faith and did not multiply the proceedings unreasonably and vexatiously. As a lawyer at the bar for approximately thirty years, experienced in class action practice and never previously sanctioned,[1] he contends that the motions he

_____

1. Malakoff claims that he practiced law for thirty years and has a substantial professional interest in class action procedures. He asserts that he was a member of this Court's 1985 Task Force on Court Awarded Attorneys' Fees, and, as a founding member and board member of the National Association of Consumer Advocates, he contributed to the Standards and Guidelines for Litigating and Settling Class Actions. See 176 F.R.D. 375 (1987). He also states that he is a frequent contributor to and faculty member of the American Law Institute, the National Consumer Law Center, and that his legal rating in Martindale-Hubbell is AV.

filed were reasonably warranted. Even the Magistrate Judge (MJ) in assessing the sanction, stated that "[w]hen viewed individually, each single instance of misbehavior by Mr. Malakoff might not warrant the sanction arrived at by the Court. But considered as a whole, his transgressions evidence a pattern of obfuscation and mean spiritedness." (Maj. Op. at 21). This sweeping statement, however, is not supported by a single finding of fact and does not support the conclusion that Malakoff multiplied the proceedings vexatiously and acted wilfully in bad faith. Obfuscation and mean spiritedness, even if true, are indeed not commendable, but they do not amount to a violation of S 1927.

The District Court correctly stated that the purpose of S 1927 is to deter intentional and unnecessary delay and that in imposing sanctions, a court must find: "(1) a multiplication of the proceedings by an attorney; (2) by conduct that can be characterized as unreasonable and vexatious; with a (3) resulting increase in the cost of proceedings; and (4) bad faith or intentional misconduct." In re Prudential, 63 F.Supp.2d 516, 520 (D.N.J. 1999). There is no evidence whatsoever that Malakoff filed the motion to recuse Judge Wolin for the purpose of intentionally or unnecessarily delaying the proceedings. Malakoff argued to the MJ that his motion to recuse, which prompted Lead Counsel's first motion for sanctions, was not filed in bad faith and in fact had a colorable basis. Judge Walls concluded that any reasonable attorney would have understood that Judge Wolin could permissibly engage in ex parte communication in a complex class action such as In re Prudential. Id. The Court also rejected Malakoff's contention that even if ex parte communication was permissible, he was entitled to notice of the meetings and an opportunity to object. The Court reasoned that Malakoff had consented to the Court's ex parte communication pertaining to settlement long before his recusal motion, and the alleged communications between counsel and the court involved settlement of the nationwide class action in which Malakoff's clients did not wish to be involved. Id.

Initially, it should be noted that a review of Malakoff's

December 3, 1996, recusal motion reveals that his objection was not directed to communication between Judge Wolin and Lead Counsel. His concern was that the judge met ex parte with Prudential's Chairman, Arthur F. Ryan, and that he met with Select Insurance Regulators about the proposed settlement without advance notice to Kettle/Krell, Malakoff's clients. Malakoff also believed that those meetings went beyond the scope of his original consent. Malakoff also complained, inter alia , about the Court's failure to allow discovery pertaining to the fairness of the proposed settlement.2

Malakoff may have misconceived the extent of the District Court's authority and its justifiable necessity in meeting with officers of Prudential in effectuating this complex settlement. Malakoff also may not have shown good judgment in his motion to recuse, but mistake of judgment is not uncommon among lawyers or even judges. A mistake of judgment does not per se constitute wilful bad faith. Baker Indus. Inc. v. Cerberus Ltd., 764 F.2d 204, 209 (3d Cir. 1985). Judge Walls made no specific finding that Malakoff filed the motion in bad faith but only concurred in the MJ's "conclusions" rejecting Malakoff's contention that the motion was objectively reasonable and filed in good faith. In re Prudential, 63 F.Supp.2d at 521. Understandably, Judge Walls only referred to the MJ's conclusions because the MJ, too, made no fact finding of bad faith with respect to Malakoff's recusal motion.

In addition to the foregoing reasons, Malakoff's motion for recusal was based on three additional grounds. A fair and balanced reading of these grounds, however, renders questionable at best any finding of intent to delay, vexatiousness, or bad faith. To sanction an attorney for questionably egregious conduct unfairly burdens legitimate, zealous advocacy, especially in a massive national class

_____

2. Malakoff was not the only person to object to the fairness of the proposed settlement. The docket entries show that there were many others, including the Insurance Commissioner for the Commonwealth of Massachusetts, the Texas Department of Insurance, the Commissioner of Insurance for California, and the state of Florida. Malakoff, however, was the only one who filed a motion for Judge Wolin to recuse.

31

action, which in itself is sui juris and requires, as in this case, innovative and resourceful procedures.

In the Pennsylvania proceedings in Rutt v. Prudential, Prudential's attorney informed the state judge that Judge Wolin was "receptive to a discussion" with the state judge regarding potential ethical improprieties regarding Rutt's counsel. Malakoff reasonably may have believed that Prudential's suggestion to contact Judge Wolin implicated Judge Wolin in an improper plan to aid Prudential in delaying state court trials like Rutt until the class action settled. Malakoff believed that evidence produced at the state court in Rutt and other state cases could "be crucial in evaluating the fairness of the proposed settlement" in the federal court. Although later developments revealed that Malakoff erred on this basis for recusal, such an error is not a violation of S 1927. An attorney who reasonably believed in the merits of a motion when filed should not be sanctioned. To do so subjects every litigating lawyer whose motion is denied the risk of sanctions.

Malakoff also based his recusal motion on alleged ex parte contacts between Judge Wolin and David Gross, Esquire, counsel for a former Prudential employee named David Fastenburg who was accused of destroying material Prudential documents. During an October 21, 1996, hearing, Judge Wolin appeared to refer to a personal conversation with Mr. Gross by stating, "I know Mr. Fastenburg's lawyer . . . [a]nd Mr. Gross vehemently denies on behalf of Mr. Fastenburg that any document was ever destroyed by Mr. Fastenburg." The Judge's comments come in connection with charges (later proven) that Prudential had destroyed material documents. Prudential fired Fastenburg for allowing the destruction of documents in the office he supervised. In response, Fastenburg sued for wrongful termination. In re Prudential, 148 F.3d 283, 343 (3d Cir. 1998). Although it became clear to some by mid-December, 1996, that Judge Wolin had a legitimate basis for his October statement3 and that he had not engaged in improper ex parte communications with Mr. Gross, Malakoff already had filed his recusal motion on December 3, 1996, well before his belief was challenged.

_____

3. Mr. Gross's denial was reported in some newspapers.

32

Malakoff believed that Judge Wolin had engaged in improper ex parte communications because the legitimate sources of information cited by Judge Wolin never mentioned a "vehement" denial by Mr. Gross, and Judge Wolin never denied speaking privately to Mr. Gross. 4 Hence, while five years later it is clear that Malakoff's perception concerning Gross was misplaced, it was not unreasonable or made in bad faith. Again, there is no evidence that Malakoff's interpretation of these proceedings intentionally or vexatiously extended or delayed the proceedings.

Lastly, Malakoff claims he based his recusal motion on the District Court's comments at the October 16, 1996, conference with state insurance regulators. Malakoff cites statements made by the Judge that this was "my settlement," that all of those present must "hang together" so that they could accomplish what they wanted to accomplish for their respective interests, and the Judge's comment that "although I wasn't in all the negotiations, I wasn't just a pretty face." In the underlying appeal of the settlement on the merits, the Court reviewed the claims that these statements of Judge Wolin demonstrated his bias in favor of the settlement. In re Prudential, 148 F.3d at 340–45. Moreover, the Court of Appeals stated that the District Court made it clear at the same conference that it had not yet made any decision regarding the proposed settlement or the proposed settlement class.

Whether the foregoing incident offered a colorable basis for a motion to recuse may be arguable, but there is nothing about it that warrants the imposition of sanctions under S 1927. Malakoff only needed a single reasonable, non-vexatious, non-bad faith basis for his recusal motion. Malakoff had several colorable bases for the motion. Focusing on the District Court's opinion imposing sanctions, there is an absence of specific findings of intentional misconduct, of bad faith or of any delay or extension of the proceedings. The record reasonably supports the conclusion that Malakoff had a colorable basis

_____

4. Malakoff alleged improper ex parte communications, and those communications, if true, would have been a valid basis for recusal regardless of the District Court's further orders against Prudential.

for his recusal motion. Moreover, in this high profile class action, Malakoff's motion probably served a very useful public purpose in removing any mis-perception of the impartiality of the court on the part of any of the policy holders, including Malakoff's clients and the many others who filed objections to the fairness of the proposed settlement. There is no evidence that the recusal motion justified sanctions under S 1927 and no findings of wilful bad faith to support it. Punishment under this statute is "sparingly applied" and requires a detailed finding that the proceedings were both `unreasonable and vexatious.' " FDIC v. Calhoun, 34 F.3d 1291, 1297 (5th Cir. 1994). In this case, there is an absence of detailed findings and an absence of a "sparing" application of punishment.

In reviewing the District Court's opinion, it is sometimes difficult to distinguish between sanctions imposed under S 1927 and those imposed under the inherent power of the court. The distinction is crucial, because we hold that the disciplinary conduct sanctions under the court's inherent powers violated due process. Sanctions under S 1927 are compensatory in nature and are intended to compensate opposing counsel for vexatious and unreasonable conduct that unnecessarily delayed or extended the litigation. Yet, in considering "Additional Bases for Sanctions" under S 1927, the District Court stated that the MJ"concluded that Mr. Malakoff abused the privilege of practicing before this Court. His behavior since his arrival on the scene in this litigation has been deplorable." In re Prudential, 63 F.Supp.2d at 521. This sweeping assessment of the attorney's conduct, even if it were unchallenged, does not support a violation of the statute. This unsupported, conclusory statement reflects a mindset of the inherent power of the court that colored the District Court's judgment with respect to the motion for sanctions under S 1927.

The majority points to the rejection of Malakoff's argument on the recusal motion on the appeal to this court from the fairness hearings. This court rejected the argument but it never suggested or stated that the motion for recusal was made in bad faith or may have otherwise violated S 1927.

34

II.

Among the subsequent tag-along allegations filed by Lead
Counsel to bolster their S 1927 cross-motion for sanctions
was Malakoff's criticism of the fee examiner. This Court
considered the issues on the appeal of the underlying
litigation and reiterated Judge Wolin's conclusions that
Malakoff had "misunderstood the fee examiner's role" and
had advanced "hypertechnical arguments" in support of his
motion for disqualification. Judge Walls, in reviewing the
imposition of sanctions, concluded that Malakoff "may have
been entitled to object to Mr. Greenberg's ultimate
conclusion." In fact, the objection resulted in a remand by
the Court of Appeals for further consideration of attorneys'
fees. Judge Walls, however, concluded that Malakoff had no
basis for objecting to the appointment. However, such an
objection in no way violated S 1927; Judge Walls made no
finding that it did, and neither did the MJ. There is no
evidence that the objection unreasonably prolonged the
litigation or that it was made in bad faith. In light of this
Court's remand to the District Court for further
consideration of the attorneys' fees, the objection arguably
had merit. Whether it did or not is insignificant at this
point; what is significant is that there is no evidence that
the objection unreasonably multiplied the litigation in
violation of S 1927.

Judge Walls then turned to the MJ's observations that
Malakoff had failed to provide Judge Wolin with courtesy
copies of his motions before releasing them to the media.
Malakoff responded that he was advised for the first time in
Judge Wolin's December 1996 hearing of the judge's desire
for courtesy copies; up until that point, Malakoff had filed
pursuant to the local rules and provided copies to the
media only upon filing. Judge Walls concluded that even if
the Court were to accept Malakoff's response that he never
released copies of his motions to the press before their
filing, he "should have known that the media would contact
Judge Wolin's chambers upon receipt of any motion papers.
As an experienced attorney, he should have realized that
the clerk's office would not deliver courtesy copies to
chambers immediately." Id. at 521-522. Judge Walls
asserted that Malakoff's failure to accord Judge Wolin the

35

same respect as the media was unacceptable "and indicates that he acted in bad faith." Id. at 522.

The failure, however, to provide copies of the motion papers to the Court may have been arguably thoughtless or even discourteous, but clearly not a violation ofS 1927. The Court did not find that the failure to supply copies of Malakoff's motions to Judge Wolin at the time of filing multiplied or prolonged the litigation. It could not have done so. In no way did this conduct delay the litigation or add to the burden of Lead Counsel as to warrant compensatory sanctions under S 1927. Neither the District Court nor the MJ could or did make such a finding.

The District Court then examined Malakoff's 23rd and 24th affidavits, both filed within three days of each other and subsequent to Malakoff's motion for recusal. Malakoff claimed that the affidavits were warranted. He argued that the 24th affidavit was intended to supplement and correct the legal and factual bases for motions then pending before the District Court. The District Court, however, concluded that the affidavits merely restated arguments previously rejected, and repeated allegations of impropriety on the part of the trial judge initially presented in Malakoff's recusal motion. Quoting the MJ, Judge Walls found that they "evidence[d] no purpose other than to embarrass the Court." Id. This is an arguable conclusion. However, there is no evidence that they violated S 1927 and the court made no findings that they multiplied the proceedings and were filed in bad faith.5

As for Malakoff's problems with the discovery process, the MJ in his Report and Recommendation pointed to two incidents which he concluded caused "colossal time delays and monumental obstacles to the orderly settlement of this action." These two incidents consisted of: (1) a reluctance to review the thousands of documents in the proceedings and

---

5. The majority offers no explanation how the affidavits multiplied the litigation and why they justify compensatory compensation to Lead Counsel as sanctions under S 1927. Class Counsel, including Lead Counsel, already were awarded fees in the sum of $45 million by the District Court, conditional on another $45 million in the event 330,000 claims were filed by June 1, 1997. In re Prudential, 148 F.3d at 332.

instead requesting a keyword search of precedential documents in New York; and (2) a disregard of Judge Wolin's order to parties seeking to present evidence at a fairness hearing to examine the evidence at the movant's offices. The MJ found that Malakoff demanded charts summarizing the evidence. Malakoff, in his defense, argues that he only requested a "keyword" search when he saw the enormous volume of material at the document depository, amounting to hundreds of thousands of documents. As for the charts, Malakoff argues that he moved to compel their production only after Lead Counsel refused his request that they fax them at Malakoff's expense. Judge Walls concluded that this conduct "unreasonably multiplied the straightforward discovery process and delayed the ultimate settlement of the case." In re Prudential, 63 F.Supp.2d at 522.

Judge Walls relies on the MJ's conclusions as to the effect of these two incidents. Neither he nor the MJ explain, however, how an effort on the part of a lawyer to simplify and expedite the discovery process by requesting a "keyword" search and a chart of the enormous mountain of documents multiplied or prolonged the proceedings. It is incomprehensible that a request for a "keyword" search of precedential documents intentionally multiplied, delayed, or extended the litigation. No explanation is given how it did do so. The "keyword" search was denied. Had it been granted, it would have expedited discovery rather than delayed it or the settlement. Similarly, it is not understandable why the request for charts summarizing the evidence or for the "keyword" search resulted in "colossal time delays and monumental obstacles" in the settlement of the litigation. Id. Again, no finding or explanation is given. The requests may have been presumptuous, but they could not have violated S 1927. By no stretch of the imagination could such requests have unreasonably "multiplied the straightforward discovery process and delayed the ultimate settlement of the case," as the Court concluded. Id. In fact, until Lead Counsel endeavored to reinforce their motion for sanctions with their tag-along filings, no one had ever complained of Malakoff's conduct during discovery and no one had ever invoked Rule 11 for sanctions. The supplementary motion

37

is a belated and unreasonable effort to support the motion for S 1927 sanctions, and there is no finding that these two requests were made in wilful bad faith.

Finally, we review the action of the District Court with respect to Malakoff's Rule 11 and S 1927 motions. Judge Walls noted in his opinion that the MJ had examined the two motions and had concluded that they were identical, only refuted Lead Counsel's December 1999 cross-motion, did not present an affirmative ground for sanctions, and improperly side-stepped Rule 11's twenty-one day safe harbor provisions. Id. at 523. The District Court saw no merit to Malakoff's objections to these conclusions, although it acknowledged that Malakoff was entitled to pursue his S 1927 motion. The Court did not, however, believe that Malakoff was "entitled to cut-and-paste his Rule 11 motion and transform it into a S 1927 motion." Id. The District Court ultimately concluded that the two motions were identical, baseless, and filed in bad faith.

On appeal, Malakoff contends that he was entitled to seek both S 1927 and Rule 11 sanctions for the same conduct, and was entitled to pursue the S 1927 sanctions, regardless of whether Lead Counsel took advantage of Rule 11's safe harbor in withdrawing the offending documents. He argues that the legal standard for S 1927 sanctions is different and far more stringent than for Rule 11 sanctions. He asserts that S 1927 sanctions are warranted against a party who unreasonably and vexatiously multiplied the proceedings and that a finding of bad faith is necessary. On the other hand, Rule 11 sanctions require a more lenient standard of proof, no requirement of bad faith, and aims at a party who has made unsupported or frivolous arguments in the filings. He reasonably believed that the two motions satisfied the requisite standards because they alleged:

> Liaison and Lead Counsel's motion [for sanctions], supporting briefs, affidavits and other papers referred to herein were filed unreasonably and vexatiously in order to multiply the proceedings. Further, these motions and other papers were frivolous. Finally, these papers were filed solely to intimidate Michael P. Malakoff who is objecting to the settlement procedures

> used, the settlement, and the request for $90 million in
> attorneys' fees.

(A-2617).

Malakoff concedes that the motions are largely identical because they are based on the same conduct. This, he argues, does not necessarily render them improper. The standards and purposes of each differ. He also denies that his motions only refute the cross-motion of Lead Counsel. On the contrary, he argues his motions explicitly state that Lead Counsel's motion for sanctions was filed frivolously in bad faith for an improper purpose, and unreasonably and vexatiously multiplied the proceedings.

We do not need to decide whether the motions were identical, whether they contained affirmative grounds for sanctions, or whether the S 1927 motion was for the purpose of side-stepping Rule 11's safe harbor provision. We must determine whether the District Court erred when it "conclud[ed] that these identical motions were baseless and filed in bad faith." Id. at 523. The District Court made no findings in this respect; it merely announced its conclusion. Id. We do not know from this conclusory statement whether the motions were baseless in law or in fact, and have no explanation of how they violatedS 1927.6

In summarizing the sanctions imposed on Malakoff under S 1927, the District Court "adopt[ed] Magistrate Judge Pisano's conclusion that `it is clear that, after viewing his entire course of conduct over more than three years before this Court, Mr. Malakoff takes an impractical, hyper-technical, and unreasonable approach to litigation.' " Id. The purpose of S 1927, however, is not to alter the style,

_____

6. Judge Walls held that both motions were only defenses to Lead Counsel's S 1927 motion and advanced no coherent legal argument as to why they should be sanctioned; that by submitting identical papers on the two sanctioned motions Malakoff abused the sanctions process. Id. The motions are different in that Rule 11 does not require a finding of bad faith. Even though they may have been filed as a defense to Lead Counsel's motion for sanctions, it is arguable that this constituted an abuse of the sanctions process. Moreover, there is no evidence or finding that they prolonged the proceedings and were made in violation of the Statute.

personality, practicality, or even the judgment of a trial lawyer. It empowers the punishment of a lawyer who, in wilful bad faith, unreasonably and vexatiously multiplies the proceedings.

Significantly, the MJ recommended "that pursuant to S 1927, Mr. Malakoff should pay to Class Counsel the sum of $100,000 and this amount of money is justifiably significant and will require Mr. Malakoff to suffer sacrifices in order to pay." In formulating this harsh and draconian sanction, it is obvious from reading the MJ's Report and Recommendation that he ignored the statute. The statute does not empower a court to fine a lawyer for poor lawyering or even misconduct. The statute provides for sanctions in the form of compensation for provable loss of time and additional expenses incurred by the offended lawyer as a result of the alleged unreasonable delaying action. The record here is devoid of any evidence proving "the excess costs, expenses and attorney's fees" reasonably incurred because of Malakoff.

The majority acknowledges that Judge Walls did not make express findings of bad faith and did not rely upon any of "the above-specified conduct in particular, [but] based his finding of the requisite bad faith and vexatious conduct on the totality of the campaign Malakoff waged during the course of this litigation." (Maj. op. at 21). Notwithstanding, it adopts the "conclusion" reached by the MJ and the District Court. (Maj. op. at 22). However, Malakoff and his clients were captives of the order consolidating their state cases in the New Jersey federal court.7 Malakoff respectfully and professionally satisfied the procedures and tools for objection provided by statute and the rules of court. Falling back on the "totality of the campaign" in lieu of specific findings of wilful bad faith and evidence of excess costs and time incurred by Lead Counsel is not, in my opinion, an acceptable basis for sanctions

_____

7. Prudential's conduct had been under investigation for several years. Malakoff filed suit in behalf of his clients in two state courts. Malakoff did not appear in the New Jersey District Court until after the Judicial Panel on Multidistrict Litigation centralized all the cases before Judge Wolin on August 3, 1995.

40

under a penal statute and ignores the "detailed finding" required under FDIC v. Calhoun, supra at 34.

It appears clear that the MJ was influenced by his mindset on the inherent power of the court. This is shown by his statement just prior to the MJ's determination to impose monetary sanctions pertaining to Malakoff's behavior. Yet, the MJ acknowledges that "[w]hen viewed individually, each single instance of misbehavior by Mr. Malakoff might not warrant the sanction arrived at by the Court." (Maj. op. at 21) Also significant, Lead Counsel never introduced evidence of increased costs and time to support their cross-motion for sanctions. Moreover, this court has stated that before a court can order the imposition of attorneys' fees under S 1927, it must find bad faith on the part of the offending attorney that is wilful. Zuk v. Eppi of the Med. Coll. of Pa., 103 F.3d 294, 297 (quoting Williams v. Giant Eagle Mkt., 883 F.2d, 1184, 1191 (3d Cir. 1989)). There are no such findings and no basis for them.

III.

Finally, I think a reviewing court should carefully note the role of an objecting lawyer, especially in as complex and massive class action as was this. Malakoff opposed a large battery of lawyers intent on reaching a settlement and the payment of huge fees. Class actions are unique, each is different, and here many state and federal actions were consolidated for disposition. An objecting lawyer should not be expected to be a quiescent, listless participant in the proceedings without expressing contrary view or theories; the lawyer should have reasonable leeway for expression and argument.8 In another class action, this Court recently

_____

8. Malakoff concedes that he was a zealous advocate but denies that he acted in bad faith. Amicus Curiae Public Citizen Litigation Group argues that objectors like Malakoff play a vital but difficult role in class action
settlements. Public Citizen argues that objectors should be encouraged, not chilled, because of the beneficial role they play. Objectors and their counsel pursue legitimate and important goals by seeking to block or significantly improve class settlements. "Objecting is often the only way to protect some class members' interests, even if class members have the opportunity to opt out of the class." Amicus Br. at 10-11.

41

noted some of the uncertainties and difficulties that beset the court in litigation where most of the parties are not personally represented. We stated that there is a recognition

> that in the class action context there is no way for"the class" to select, retain, or monitor its lawyers in the way that an individual client would, and because of doubts that a typical lead plaintiff . . . is a terribly good agent for the class.

In re Cendant Corp. Litig., 264 F.3d 201, 282 (3d Cir. 2001).

Because of the conflicting interests between Lead Counsel and this extremely large class over fees to be derived from the settlement, there is a high degree of professional responsibility that they owe a largely absent class who depend on lawyers they never saw or retained. The degree of responsibility is further enhanced in this case because the class consists of ordinary policy holders and not sophisticated institutions or investors. Therefore, a lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries. The objecting lawyer independently can monitor the proposed settlement, costs, and fees for Class Counsel and, thus, aid the court in arriving at a fair and just settlement for the members of the class who individually are largely unrepresented.

When objecting counsel raises pertinent questions concerning the conduct of Lead Counsel, the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund, he or she not only renders a service to the class, but also aids the court. The record reasonably supports the conclusion that Malakoff's objector status had the wholesome effect of providing a careful scrutiny of the fairness of a gigantic settlement affecting millions of policyholders nationwide. He indisputably enhanced the amount of the settlement, and secured a reconsideration of class counsel fees.

After all, Class Counsel has very little communication with the members of the class and knows little about them individually. The members of the class play little or no role

42

in the selection of lead or liaison counsel. Defendants' counsel and Class Counsel reach a point where they are cooperating in an effort to consummate the settlements. Even the court at this point may be inclined to favor settlement of a huge, complex action, and the general atmosphere becomes largely cooperative.

Under such circumstances, the motions and arguments of an objecting lawyer understandably may be discordant and disagreeable, but not necessarily unreasonable. The objections may be worthy and, at least useful because, as the distinguished historian, Allan Nevins, wrote many years ago, from the conflict of ideas comes crystallization of thought. Objections serve a highly useful vehicle for the members of the class and the public generally; they require consideration by the court and its disposition of them usually provides reassurance that the settlement and the fees approved are fair and just.

Thus, I believe that as counsel for objecting plaintiffs, Malakoff played a useful and even constructive role in this litigation. He may have been overzealous and tenacious, but Lead Counsel, as experienced, seasoned class action lawyers, are no shrinking violets. They do not complain that Malakoff was deceptive or mendacious. On the other hand, his services, acknowledged by Lead Counsel, enhanced the class settlement by $50 million, and he succeeded in having this Court on appeal remand for further consideration the $90 million fee provided by the settlement.

For the reasons set forth above, I would also reverse the imposition of the severe sanctions imposed on Malakoff under S 1927.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

43