In re Sharon Diane HILL, Debtor,

Roberta A. DeAngelis, Acting United States Trustee for Region 3, Movant,

v.

Countrywide Home Loans, Inc., Goldbeck, McCafferty and McKeever, and Attorney Leslie Puida, Respondents.

No. 01–22574 JAD.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 5, 2010.

Donald R. Calaiaro, Calaiaro & Corbett, P.C., Kenneth Steidl, Steidl & Steinberg, Robert O. Lampl, Pittsburgh, PA, for Debtor.

## MEMORANDUM ORDER

THOMAS P. AGRESTI, Chief Judge.

Presently before the Court is the **Motion to Dismiss with Prejudice the Court's July 29, 2009 Amended Rule to Show Cause As to It** ("Motion"), Document No. 541 filed by Respondent Countrywide Home Loans, Inc. The United States Trustee ("UST") filed a **Statement in Support** of the Motion at Document No. 547. A **Response** by the remaining Respondents, Goldbeck, McCafferty and McKeever and Leslie Puida ("collectively "GMM") was filed at Document No. 553.

The Motion seeks dismissal of the Rule to Show Cause issued by the Court on July 29, 2009.[1] The basis for the Motion is alleged to be "material developments" that have occurred subsequent to the trial on the Rule that was held in December 2009, namely, the consummation of a settlement agreement between Countrywide and the Federal Trade Commission effected by a Consent Order entered in the Central District of California which is intended to be "comprehensive" and "global" in nature. As part of that settlement, the UST agreed to voluntarily dismiss certain pending adversary proceedings and other

bankruptcy-related matters in other bankruptcy courts involving Countrywide. However, since the present matter was initiated by this Court and could not be unilaterally dismissed by the UST, it was agreed that Countrywide would seek dismissal and the UST would support that request, which she has done. GMM generally opposes the Motion, but claims that if it is granted the Court should dismiss the entire Rule. For the reasons which follow, the Motion will be denied.

■ The initial decision whether to issue the Rule was within the sound discretion of the Court, and likewise, the ultimate decision whether to impose sanctions. See, e.g., Chambers v. NASCO, Inc. 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), In re Prudential Ins. Co. of America Sales Practice Litigation Agent Actions, 278 F.3d 175 (3d Cir.2002), Arrow Drilling Co., Inc. v. Carpenter, 125 Fed. Appx. 423 (3d Cir.2005), Sermak v. Manuel 194 F.3d 1314 (6th Cir.1999), and Sumler v. Secretary of Health and Human Services, 834 F.2d 711, 713 (8th Cir.1987). Although there is scant authority on the test for dismissing a rule once it has been issued, such is obviously akin to a decision not to award sanctions and subject to the same standard of discretion. See, e.g., Eagle Comtronics, Inc. v. Arrow Communication Laboratories, 305 F.3d 1303 (Fed. Cir.2002) (court found that district court abused its discretion by not imposing sanctions pursuant to its inherent power where an order, clear and unambiguous on its face, was violated). After considering the Motion and all pertinent facts the Court concludes that dismissal is not warranted.

In the first place, in a reversal of the normal pattern, the Rule was issued only

1. The Motion mistakenly refers to a "Amended Rule to Show Cause." In fact only one Rule was issued.

after extensive discovery had been conducted. In a sense, the UST had to convince the Court that there was sufficient evidence for a rule to show cause to be issued, and that threshold having been crossed, the matter became of institutional interest to the Court. Before it could do so, the Court would have to be presented with a compelling reason to drop the *Rule* in these circumstances. That compelling reason has not been provided.

Secondly, the Court is not convinced that the matters covered in the *Consent Order* fully correspond with the matters at issue under the *Rule*. Despite some broadly-worded language from the UST in the process leading up to the issuance of the *Rule*, by which she tried to couch the present case as an example of alleged national and systemic abuses by Countrywide, when the Court issued the *Rule* it did so only on narrow and well-defined grounds highly specific to the Sharon Hill case. Furthermore, the evidence presented at trial was similarly focused, with the UST making only fleeting references to anything that might be viewed as evidence of a system-wide problem. The Court has reviewed the *Consent Order* attached to the *Motion* and while some of its wide scope may partially encompass the conduct at issue under the *Rule*, it does not fully capture the *Rule*.

Third, the *Motion* was filed extremely late in the process. As noted, extensive discovery was conducted, a long trial was held, closing arguments were made, and proposed findings of fact and conclusions of law were filed—all by early March 2010. The Court was reviewing the voluminous evidence and working on an opinion when Countrywide and the UST filed a "Status Report" on May 20, 2010, in which they stated that they had reached a "conditional resolution" of the issues between them and asked the Court to defer a decision on the

*Rule* pending certain conditions precedent to such resolution. In response to that development, the Court put the preparation of the Opinion on the "back burner" and scheduled a hearing for June 11, 2010, to discuss the *Status Report*. At the hearing, the Court informed the Parties that it would not be bound by any "outside" settlement between Countrywide and the UST but would certainly consider any motion to dismiss that might be filed. If such motion was to be filed, the Court anticipated it would be done fairly soon but, in fact, the *Motion* was not filed until more than two months later, by which time the Court had resumed work on the opinion in earnest.

The Court understands that Countrywide's dealings with FTC leading to the settlement in the California court were on a separate track and not tied to this case. The Court is not "blaming" Countrywide in that sense for the late filing here. Nevertheless, the Court is very reluctant to grant a request to dismiss a case at this juncture in the process. For the Court to do so in a matter of this nature would almost seem to be a shirking of its duty.

Fourth, in deciding the *Motion*, the Court had the benefit of effectively completing its opinion on the *Rule* and tentatively concluded that Countrywide would only be sanctioned as to Item 4 of the *Rule*—for filing a false pleading in this Court. That is a matter highly specific to this case and in no sense within the four corners of the *Consent Order*. The Court has since finalized this view, as will be apparent from the opinion on the *Rule* being concurrently issued. Given the finding that the *Rule* will be vacated with respect to Items 1, 2 and 3 contained in it, that may have been a sufficient reason to grant the *Motion* with respect to that part of the *Rule*. Although the Court considered that possibility, it ultimately decided

that the more appropriate approach was to deny the *Motion* in its entirety so that the portion of the Opinion addressing Items 1, 2 and 3 would still be included. Even though sanctions were not imposed against Countrywide for a number of reasons as to those Items, Countrywide's actions were not blameless and were at times, egregious. The Court finds that the benefit to be gained by fully airing its findings outweighs any consideration of simply dismissing the *Rule* in part.

***AND NOW,*** this ***5th*** day of ***October, 2010,*** for the foregoing reasons, it is ***ORDERED, ADJUDGED and DECREED*** that the *Motion to Dismiss with Prejudice the Court's July 29, 2009 Amended Rule to Show Cause As to It* is ***DENIED.***