**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT
_____

No. 08-3950
_____

YOLANDA ADAMS,
                                        Appellant

V.

FORD MOTOR CO.


Appeal from the District Court of the
Virgin Islands, Division of St. Croix
(D.V.I. No. 04-cv-00053)
Magistrate Judge: The Honorable George W. Cannon

Argued December 16, 2010

Before: McKEE, *Chief Judge*, SMITH, *Circuit Judge*,
and FUENTES, *Circuit Judge*

(Opinion Filed:  August 5, 2011)

Thomas Alkon, Esq. (argued)
Law Offices of Thomas Alkon
2115 Queen Street
Christiansted, St. Croix, VI  00820

     *Attorney for Plaintiff-Appellant*

Ginette L. Milanes, Esq. (argued)
Office of Unites States Attorney
350 Carlos E. Chardon Street
Suite 1201
San Juan, PR 00918
     *Attorney for Amicus Curiae*

OPINION

McKEE, *Chief Judge*.

Vincent A. Colianni appeals from the magistrate judge's order finding that he violated ABA Model Rule of Professional Conduct Rule 3.5 by initiating post-verdict contact with a juror. For the reasons explained below, we hold that the judge abused his discretion in reaching that conclusion and sanctioning Colianni for his conduct. We further find that the judge denied Colianni's due process rights by not following the disciplinary procedures outlined in Local Rule 83.2(b) of the District Court of the Virgin Islands and by failing to give Colianni sufficient notice and an opportunity to be heard prior to finding misconduct and imposing sanctions.

## I. Factual Background and Procedural History

Appellant Yolanda Adams filed suit in the District Court of the Virgin Islands after she suffered a serious brain injury while driving a vehicle manufactured by Ford Motor Company. By consent of the parties, Magistrate Judge George W. Cannon presided over the trial in the district court. The jury awarded Adams $2.3 million in damages, and determined that she was 77.5% at fault and that Ford was 22.5% at fault.

Vincent Colianni, Adam's counsel of record, called one of the jurors shortly after the trial ended to ask about the jury's award of damages and the assignment of fault between the parties. Colianni apparently believed that there had been a clerical error on the verdict form. After not being able to reach the jury foreperson, Colianni called another juror, Alicia Barnes. Barnes asked Colianni whether it was appropriate for her to speak with him, and Colianni replied that it was permissible. Colianni then explained the law of contributory negligence in the Virgin Islands, and mistakenly told Barnes that the court could apply the negligence standard for contributory fault as opposed to strict liability. After briefly speaking with Colianni, Barnes told him that she felt uncomfortable discussing the case with him and the call ended. The conversation was very brief, lasting only about one minute. Three of Colianni's colleagues were in his office with him and heard the entire conversation, which Colianni had placed on the speakerphone.

2

Shortly after the call ended, Barnes contacted Magistrate Judge Cannon and informed him that she felt the call was inappropriate. The judge responded by asking Barnes to put her complaint in writing. A few days later, the judge received a letter from Barnes in which she related the circumstances of the call and stated that she found Colianni's conduct "reprehensible," and "bordering on harassment." (App. 60). She also stated that Colianni's call was "the reason many are leery of serving as jurors in our small community." (App. 60).

Thereafter, Magistrate Judge Cannon contacted counsel for both parties and set the matter for an immediate hearing the next day. At the hearing, the judge began by reading the juror's letter and the text of ABA Model Rule 3.5 into the record. The judge then instructed Colianni to recount his version of the telephone call and to explain why he had reached out to the juror. Colianni responded that he wished to ask the juror about how his client's damages had been calculated. Colianni further explained that he had informed the juror that she was under no obligation to speak with him, that it was not until he had already made his inquiries regarding the jury's award that the juror expressed her discomfort, and that he had immediately ended the call once the juror said that she was uncomfortable. Colianni acknowledged that he had mistakenly given the juror incorrect information about the contributory negligence standard that applied in this case.

Both parties submitted memoranda after the hearing. On May 27, 2008, the magistrate judge issued an order in which he found that Colianni had "engaged in misconduct by his post-verdict communication with a juror in contravention of American Bar Association Model Rule of Professional Conduct 3.5(c)." (App. 3). The court stated that it would not disbar, suspend, or reprimand counsel pursuant to Local Rule 83.2(b)(3) or initiate disciplinary proceedings pursuant to Local Rule 83.2(b)(5). Instead, the magistrate judge referred the matter to the Virgin Islands Bar Association for a "formal investigation and disciplinary proceedings." (App. 4). At a subsequent hearing, the judge denied Colianni's request to seal the order.

Thereafter, Colianni filed a notice of appeal to this court, but we subsequently issued an opinion "reluctantly conclud[ing]" that we lacked jurisdiction to review the magistrate judge's order because

3

Colianni's appeal had been filed prior to the entry of final judgment. (App. 80). Colianni subsequently filed this timely notice of appeal.[1]

## II. Standard of Review and Jurisdiction

The decision to impose sanctions is a matter generally entrusted to the discretion of the district court. *Bowers v. The Nat'l Collegiate Athletic Assoc.*, 475 F.3d 524, 538 (3d Cir. 2007). Thus, we review a decision to impose sanctions for abuse of discretion. *Id*. (citing *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir. 1995). Although this standard of review is deferential, a court abuses its discretion in imposing sanctions when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id*.; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). When the procedure the court uses to impose sanctions raises due process issues of fair notice and the right to be heard, the standard of review is plenary. *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1993).

Adams originally filed this suit in the District Court of the Virgin Islands, which had jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeded $75,000 and the parties are completely diverse. We therefore have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## III. Discussion
## A. Standing

The government first contends that Colianni has no standing to appeal because he did not suffer an imminent injury that can be redressed by a favorable appellate decision. Specifically, the government argues that Colianni does not have a cognizable injury because the challenged order did not formally "sanction" or reprimand him.

---

[1] We directed the United States Attorney for the District of Puerto Rico to appear as *amicus curiae* and to file a brief defending Magistrate Judge Cannon's order because Ford Motor Company no longer has a stake in this litigation. We wish to thank that office for the work it did on behalf of the court in representing the challenged order.

4

As in all cases, we must first address the issue of standing because "[i]f plaintiffs do not possess Article III standing, both the District Court and this Court lack subject matter jurisdiction to address the merits of plaintiff's case." *ACLU-NJ v. Township of Wall,* 246 F.3d 258, 261 (3d Cir. 2001) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Standing is the "irreducible constitutional minimum" necessary to make a justiciable "case or controversy" under Article III, Section 2. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff's "interests" satisfy Article III when the following three elements are present:

> [First], the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. [Second], there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. [Third], it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484-85 (3d Cir. 1998) (citing *Lujan*, 504 U.S. at 560-61).

We have previously highlighted the disagreement among the courts of appeals about whether a court's statement in a judicial opinion constitutes "a legally sufficient injury to support appellate jurisdiction." *See Bowers*, 475 F.3d at 543 (internal citations omitted). Most courts agree that mere judicial criticism of an attorney's conduct is insufficient to constitute a sanction which would support standing. *See, e.g.*, *United States v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000); *Williams v. United States*, 156 F.3d 86, 90 (1st Cir. 1998); *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th

5

Cir. 1984).   On the other hand, courts nearly uniformly have held that an order rising to the level of a public reprimand qualifies as a sufficient sanction.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988); *Talao*, 222 F.3d at 1138 (equating formal finding with public reprimand and sanction); *Williams*, 156 F.3d at 92 ("Words alone may suffice [as sanctions] if they are expressly identified as a reprimand."); *see also* Fed.R. Civ.P. 11(c)(4) (providing that sanctions may consist of "nonmonetary directives"). Indeed, only the Court of Appeals for the Seventh Circuit has held that a public reprimand is not appealable unless it is accompanied by a monetary sanction.  *Clark Equip. Co. v. Lift Parts Mg.. Col, Inc.*, 972 F.2d 817, 820 (7th Cir. 1992) ("[W]e have already decided that an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects.").

There is far more disagreement among the courts about "whether a factual finding in an opinion that an attorney has engaged in improper conduct is itself a sanction, or whether the court must enter an explicit order that the conduct is sanctionable." *Bowers*, 475 F.3d at 543; *compare Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1353 (Fed. Cir. 2003) (fact that reprimand was not explicitly contained in separate order was not determinative of whether the court had entered a formal reprimand) *and Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997) (factual finding of misconduct alone is sufficient to constitute a sanction) *with Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1199 (9th Cir. 1999) (stating that a factual finding in an opinion that "merely serves to justify the imposition of a sanction is not an independent sanction").

This case is unlike any that we have previously addressed. Magistrate Judge Cannon's order is more than mere judicial criticism because the judge made a factual finding that Colianni had violated ABA Model Rule 3.5(c) and the judge then referred the matter to the Virgin Islands Bar Association for a formal investigation and disciplinary proceedings.  Moreover, the factual finding of misconduct was not in an opinion, but in the actual text of the order.  On the other hand, the order does not constitute a formal reprimand, because the judge explicitly stated that he did not seek to "disbar, suspend, or reprimand counsel."  (App. 3).

We have never before determined whether a finding of attorney misconduct in an order that is unaccompanied by a formal reprimand or the imposition of monetary penalties constitutes a

6

"sanction."  Today, we hold that, under the circumstances here, it does.  It is clear that the order directly undermines Colianni's professional reputation and standing in the community.  *Bowers*, 475 F.3d at 543.  That is far from an insignificant affront.  "A lawyer's reputation is one of his[/her] most important professional assets." *Precision Specialty Metals*, 315 F.3d at 1354.[2]  Accordingly, "[t]he importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct." *Walker,* 129 F.3d 831; *see also Talao*, 222 F.3d at 1138 (noting that a formal finding of misconduct carries the same consequences as a reprimand, as it "is likely to stigmatize [the attorney] among her colleagues and potentially could have a serious detrimental effect on her career").  It is all but inevitable that the magistrate judge's order has adversely impacted Coliani's reputation, particularly in a small legal community such as the Virgin Islands.  Moreover, the reputational harm that Colianni has suffered is magnified by the judge's refusal to place the order under seal, thus making the order accessible to anyone with access to an omnipresent internet connection and even minimal familiarity with using an internet search engine.

Furthermore, even if we assume that the order is not a reprimand, it certainly bears a greater resemblance to a reprimand than a comment that is merely critical of  Colianni's behavior.  "A reprimand generally carries with it a degree of formality."  *Talao*, 222 F.3d at 1138.   That prerequisite is clearly satisfied here because the assessment of Colianni's conduct appears in an unsealed court

---

[2] Indeed, there is more than a kernel of truth in Iago's pronouncement in *Othello*:

"Good name in man and woman . . .,
Is the immediate jewel of their souls:
Who steals my purse steals . . . nothing;
. . .
But he that filches from me my good name
Robs me of that which enriches him not
And makes me poor indeed."

William Shakespeare, *Othello*, Act III, Scene II

7

order.[3]  In addition, the magistrate judge's conclusion that Colianni violated ABA Model Rule 3.5 carries consequences that are similar to those that flow from a reprimand.  This is particularly true since Colianni could face disciplinary action from the Virgin Islands Bar Association if the order is affirmed and formal sanctions could be imposed.  Therefore, we conclude that Colianni suffered an injury in fact, and thus has standing to file this appeal.

### B.  Whether the Court Abused Its Discretion in Finding that Colianni Engaged in Misconduct

Colianni argues that the district court abused its discretion in finding that he engaged in attorney misconduct in violation of ABA Model Rule 3.5(c).  He asserts that the magistrate judge's finding was based solely on a letter from a juror, but that neither the judge nor the attorneys questioned the juror at the hearing.  In addition, Colianni points out that the judge never heard from the three witnesses who were in  Colianni's office during the phone call, nor was an evidentiary hearing ever held.  The government counters by reminding us that Magistrate Judge Cannon heard a first hand account of the conversation between Colianni and the juror just minutes after it occurred, and that the juror's letter was written while the juror was still under the emotional impact of the phone call.  Thus, the government argues the judge could have easily discerned any inconsistencies in the letter based on his conversation with the juror.

Rule 3.5(c) of the ABA Model Rules of Professional Conduct states that a lawyer shall not communicate with a juror or prospective juror after discharge of the jury if:

> 1) the communication is prohibited by law or court order;
> 2) the juror has made known to the lawyer a desire not to communicate; or

---

[3] We take no position on whether our conclusion would have been different had the order been filed under seal.  We merely note that the fact that it was not sealed makes its harmful impact all the more obvious.

3) the communication involves misrepresentation, coercion, duress or harassment;

The comment to Model Rule 3.5 explains that "A lawyer may on occasion want to communicate with a juror or prospective juror after the jury has been discharged. The lawyer may do so unless the communication is prohibited by law or a court order but must respect the desire of the juror not to talk with the lawyer." ABA Model Rule 3.5, cmt. 3.

We have never before addressed the type of conduct that constitutes a violation of Model Rule 3.5(c). Indeed, the few courts that have discussed Model Rule 3.5(c) have focused on subsection (c)(1), where an attorney has violated a court order by communicating with jurors. *See, e.g., Diettrich v. Nw. Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999) (finding that the attorneys' use of post-verdict dialogue with jury to support motions for overturning jury verdict was outside the scope of district court's permission to interview jurors informally and "invited the court to open the black box that is the jury room."); *Johnson v. Fla.*, 804 So. 2d 1218, 1225 (Fla. 2001)(finding that attorney's attempt to interview jurors was a "fishing expedition.").

Here, the magistrate judge did not specify either at the hearing or in the order which subsection of the Model Rule he believed Colianni violated. However, it is clear that Colianni did not violate Model Rule 3.5(c)(1), which bars communication with jurors when prohibited by law or a court order. Nothing in the record suggests that the judge forbade Colianni or his opposing counsel from contacting jurors after the verdict, nor do the local rules of the District Court of the Virgin Islands prohibit attorneys from contacting jurors post-verdict.

Similarly, it does not appear that Colianni violated Model Rule 3.5(c)(2), which prohibits attorneys from contacting jurors who have made clear their desire not to communicate. The juror initially asked Colianni whether she was permitted to speak with him. Once Colianni informed her that she could, she willingly conversed with him, albeit only briefly before expressing her discomfort. As noted earlier, Colianni ended the call as soon as the juror expressed that she was uncomfortable speaking with him.

9

Thus, the only remaining possibility is that the judge believed that Colianni had harassed the juror in violation of Model Rule 3.5(c)(3). There are no cases within our jurisdiction defining what constitutes "harassment" under Model Rule 3.5, nor do the comments to the Rule assist our inquiry here. In such instances, we normally look to standard reference works such as legal and general dictionaries in order to determine the ordinary meaning of words. *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008) (citing *Appalachian States Low-Level Radioactive Waste Comm'n v. Pena*, 126 F.3d 193, 197-98 (3d Cir. 1997)). Black's Dictionary defines harassment as "words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." Black's Law Dictionary 784 (9th ed. 2009). However, it is inconceivable that Colianni's conduct constituted "harassment" under Model Rule 3.5(c)(3) under any reasonable interpretation of that term. His actions were not repeated, as he only called the juror once and the entire conversation lasted less than one minute. In addition, Colianni called the juror with a legitimate purpose, which was to understand how the jury had calculated damages. As soon as the juror expressed that she did not wish to speak with him, he ended the conversation. This cannot possibly constitute harassment and the record does not support a conclusion that Colianni's conduct violated any other provision of the Model Rule. Because the court "based its ruling [to the contrary]. . . on a clearly erroneous assessment of the evidence," *Bowers*, 475 F.3d at 538, we conclude that the court abused its discretion in finding that Colianni engaged in misconduct.

### C. Whether the Court Denied Colianni His Procedural Due Process Rights Under Virgin Islands Local Rule 83.2

Colianni further contends that the court violated his procedural due process rights by failing to follow the disciplinary procedures as set forth in Local Rule 83.2(b) of the District Court of the Virgin Islands. The rule provides that "when misconduct or allegations of misconduct . . . would warrant discipline of an attorney admitted to practice before the court shall come to the attention of a judge of this court. . . the Chief Judge . . . shall refer the matter to the clerk of court, who shall refer it to counsel for investigation and the prosecution of a formal disciplinary proceeding." The rule also states that an order following a

disciplinary proceeding "shall be placed under seal until further order of the court."

The government insists that the magistrate judge was not required to follow Local Rule 83.2(b) because the rule applies only to the imposition of sanctions. That argument is of little moment, however, because as we have already explained, the magistrate judge's order was equivalent to a sanction. Accordingly, the magistrate judge should have referred the allegations of misconduct to the Chief Judge for investigation and sealed the order; it did neither. We will therefore vacate the magistrate judge's order for failing to follow the local rules. *See In re Abrams*, 521 F.2d 1094, 1107 (3d Cir. 1975) (reversing sanctions order for failing to follow local rule specifying disciplinary procedures).

### D. Whether the Court Violated Colianni's Due Process Rights by Failing to Give Notice of Possible Sanctions

Finally, Colianni argues that the magistrate judge violated his due process rights by failing to provide him with notice that sanctions might be imposed. Colianni asserts that at the meeting that the magistrate judge convened to discuss the juror's letter, the judge never mentioned that he could potentially be subject to sanctions. After the meeting, the judge entered an order to schedule a "Hearing on Juror's Note." The May 9, 2008 order made no mention of potential sanctions against Colianni either. Colianni points out that during the hearing on May 13, 2008, the judge expressed that he was not happy that the juror had been contacted, but the judge never informed Colianni that he could be subject to disciplinary proceedings. Colianni asserts that the first time he realized that he was being sanctioned is when he received the magistrate judge's order on May 27, 2008 finding that he engaged in misconduct in violation of ABA Model Rule 3.5(c).

The government claims that Colianni was placed on notice that his communication with the juror was improper when the judge instructed counsel not to have any further contact with the jurors and immediately set the matter for a hearing. The government also points out that Colianni made specific reference to the language in Model Rule 3.5(c) at least twice during the hearing as well as in the memorandum that he submitted to the court after the hearing. Thus, the government insists, the magistrate judge gave Colianni sufficient notice that he had potentially violated Model Rule 3.5(c).

"The Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a litigant or attorney." *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995). We have previously held that "particularized notice is required to comport with due process" prior to sanctioning an attorney. *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995). "Generally speaking, particularized notice will usually require notice of the precise sanctioning tool that the court intends to employ." *Id.* An opportunity to be heard is "especially important" where a lawyer or firm's reputation is at stake because sanctions "act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorneys' career. " *Id.* at 1227. As noted above when we referenced the availability of the internet, modern search engines and web sites oriented toward allowing consumers to voice displeasure about experiences they have had exponentially increase the impact of such sanctions on a professional's reputation and career. Moreover, such complaints are not unlike a cybernetic zombie that lives on in cyberspace long after any underlying dispute has been resolved - even if it is resolved to the ultimate satisfaction of the consumer (or client). *See* Daniel J. Solove, *Privacy and Power: Computer Databases and Metaphors for Information Privacy*, 53 Stan. L. Rev. 1393, 1412 (2001) (explaining that once information appears on the internet, it is impossible to erase it entirely because it creates "a permanent record of unparalleled pervasiveness and depth . . . almost everything on the Internet is being archived. . . little on the Internet disappears or is forgotten, even when we delete or change the information.").

Here, it is evident that Colianni had no notice, much less "particularized notice," *Charter Tech., Inc*., 57 F.3d at 1225, about the potential sanctions he faced prior to the judge's order finding that he engaged in misconduct. A review of the hearing transcript makes clear that the judge never even hinted that Colianni would be subject to sanctions. In addition, the fact that Colianni came to the hearing representing himself, as opposed to obtaining an attorney, is consistent with his claim that he did not realize the gravity of the circumstances and had no reason to believe that he might be subject to disciplinary proceedings.

In addition to the lack of notice, we find that Colianni did not have sufficient opportunity to be heard. Since the judge did not

hold an evidentiary hearing, Colianni was not given the chance to present any witnesses to testify on his behalf.  For example, Colianni could have called the three witnesses who were in his office during the phone call to testify about the conversation with the juror. Moreover, the judge did not question the juror who complained about his conduct.[4]  Accordingly, we find that the district court violated Colianni's due process rights by failing to provide him with sufficient notice and an opportunity to be heard.

## IV. Conclusion

For the foregoing reasons, we will vacate the district court's order.

---

[4] Colianni also argues that due process requires that he should have been able to question the complaining juror during a hearing.  However, given the circumstances here, we need not determine if due process extends that far.   In an appropriate case, a court can make that determination based upon all the circumstances before it, including the risk of invading the deliberative process of jury deliberations and any possible chilling effect such a procedure could have on jurors serving on a jury again.