NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2007
_____

KENNETH L. FERGUSON,
Administrator of The Estate of John Jerry Ferguson, Jr., Deceased;
JOHN J. FERGUSON, SR.


v.


VALERO ENERGY CORPORATION
D/B/A DELAWARE CITY REFINERY;
PREMCOR REFINING GROUP, INC.
A/K/A PREMCOR, INC., D/B/A DELAWARE CITY REFINERY

*MCCANN , SCHAIBLE & WALL, LLC;
*WAYNE A. SCHAIBLE,

Appellants

*(Pursuant to Rule 12(a), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-00540)
District Judge:  Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2011

Before:  HARDIMAN, BARRY and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 6, 2011)

HARDIMAN, *Circuit Judge*.

Attorney Wayne A. Schaible and his law firm, McCann, Schaible & Wall, LLC (the Firm), appeal the District Court's orders imposing sanctions. We will affirm.

I

Because we write for the parties and their counsel, who are well acquainted with the case, we recount only the essential facts and procedural history.

John Ferguson died tragically from nitrogen asphyxiation while working as a boilermaker at an oil refinery. A wrongful death and survival action ensued against Valero Energy Corporation and Premcor Refining Group, Inc. The District Court made several evidentiary rulings *in limine*, and the case proceeded to trial.

During his opening statement, attorney Schaible repeatedly violated the Court's orders, which prompted Defendants to move for a mistrial. That motion was withdrawn, however, after a conference with the judge, a curative instruction to the jury, and a promise from Schaible that "his conduct would not be repeated." Unfortunately, the direct examination of Schaible's first witness provoked a flurry of objections, nearly all of which the Court sustained. This pattern continued during Schaible's second direct examination. The Court found Schaible's conduct "very disturbing," and counsel for

2

Defendants contemplated a second motion for a mistrial. The following morning, defense counsel so moved and the motion was unopposed by Schaible's partner and co-counsel, Brian A. Wall, Jr.

Soon after the mistrial was granted, Defendants moved for sanctions pursuant to 28 U.S.C. § 1927 and the District Court's inherent power. The Court granted the motion and set a briefing schedule to help it determine the amount of sanctions. In the meantime, the parties prepared for a second trial. On the third day of jury selection, the case settled and the parties executed a routine settlement agreement. After additional proceedings, the District Court ordered Schaible and the Firm to pay Defendants $100,436.25 in sanctions. Schaible and the Firm filed this timely appeal.[1]

II

Appellants challenge both the propriety and the amount of the sanctions. We will affirm largely for the reasons stated by Judge McLaughlin in her prudent and thorough consideration of the matter.

A

We review an order awarding sanctions under 28 U.S.C. § 1927 or the court's inherent power for an abuse of discretion. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 181, 189 (3d Cir. 2002). "When the procedure the

---

[1] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332. Our jurisdiction lies under 28 U.S.C. § 1291.

court uses to impose sanctions raises due process issues of fair notice and the right to be heard, the standard of review is plenary." *Adams v. Ford Motor Co.*, 653 F.3d 299, 304 (3d Cir. 2011) (citing *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995)).

"Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 'requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'" *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (quoting *Prudential*, 278 F.3d at 188). "[T]he principal purpose of sanctions under § 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings.'" *Id.* (quoting *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297 (3d Cir. 1996)).

Federal courts possess the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)) (internal quotation marks omitted). The power extends to the regulation of attorneys as well. *See Prudential*, 278 F.3d at 189; *Martin*, 63 F.3d at 1265. "A court may resort to its inherent power to impose sanctions

even if much of the misconduct at issue is also sanctionable under statute or rules of court." *Prudential*, 278 F.3d at 189. But "[a] court must . . . exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers*, 501 U.S. at 50; *accord Prudential*, 278 F.3d at 189, 191. Thus, "a finding of bad faith is 'usually' required" before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless "'the conduct of a party or an attorney is egregious and no other basis for sanctions exists.'" *Prudential*, 278 F.3d at 181 & n.4, 189 (quoting *Martin*, 63 F.3d at 1265).

> The imposition of sanctions [where a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order"] transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*Chambers*, 501 U.S. at 46 (last two alterations in original) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

## B

Schaible and the Firm argue that sanctions were unwarranted for three reasons. First, they claim the broad release language in the parties' settlement agreement—which resolved "any and all differences and claims"—applies to Defendants' "claim" for sanctions. This argument fails for the simple and obvious reason that Schaible and the

5

Firm were not parties to the settlement agreement. That contract bound Plaintiffs and Defendants, and "legal representatives" are mentioned only in a paragraph in which Plaintiffs and their legal representatives agree to release Defendants from "any and all claims." The agreement is signed by the Firm in its capacity as counsel for Plaintiffs, and attorney Robert E. McCann—not Schaible—signed for the Firm. Thus, the settlement agreement does not in any way purport to release Plaintiffs' counsel.[2]

Appellants next argue that sanctions were inappropriate under § 1927 because the proceedings were not multiplied as a result of the mistrial. This claim is factually incorrect, however, because the trial was delayed several months, which caused additional pretrial motions practice, a second jury selection process, and some duplication of trial preparation efforts. *See Ferguson v. Valero Energy Corp.*, No. 06-540, 2010 WL 2164493, at *8 (E.D. Pa. May 27, 2010).

Finally, Appellants claim that Schaible either did not violate any court order or, if he did violate a court order, he did not do so in bad faith. The notion that Schaible did not run afoul of the District Court's orders is fanciful. During his opening statement and

---

[2] We also note that had Schaible and the Firm negotiated their own release from sanctions during the settlement talks with respect to their clients' suit, they could have been subject to disciplinary action under the conflict-of-interest provisions of the Pennsylvania Rules of Professional Conduct. *See* Pa. R. Prof'l Conduct 1.7 ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer.").

examinations of the first two witnesses, Schaible broached several topics that the Court

had ruled either inadmissible, or inadmissible subject to reconsideration based on a proper

foundation being laid at trial. Defense counsel objected more than thirty times and,

remarkably, almost every objection was sustained. The Court gently reminded Schaible

to comply with its orders more than once, and held seven sidebar conferences during the

opening statement and testimony of the first two witnesses as a result of Schaible's antics.

When Defendants moved for a mistrial following opening statements, the Court held an

*in camera* conference, which was later summarized on the record. The Court considered

declaring a mistrial, recognizing there had been numerous violations of its *in limine*

orders, but defense counsel relented in favor of a curative instruction and Schaible's

assurances that he would comply with the orders going forward. *See id.* at *5.

Appellants would have us believe that these repeated breaches of the District

Court's orders were all a misunderstanding. Schaible claims he was confused because the

Court's *in limine* orders permitted certain deposition testimony to be read into the record,

and because some of that testimony touched upon issues the Court had otherwise

excluded from evidence. We are unpersuaded. Any confusion on Schaible's part should

have been resolved following the first sidebar and chambers conference. But Schaible

continued to flout the Court's orders even after these admonitions. Accordingly, the

District Court did not abuse its discretion when it sanctioned Schaible after finding that

he breached the Court's orders in bad faith.[3]

C

Appellants also challenge the amount of the sanctions imposed by the District Court. They claim: (1) the fees awarded were not reasonable or necessary; (2) costs and expenses were awarded contrary to statute; and (3) they were denied due process.

We readily conclude that the amount of the sanctions was reasonable. The District Court trimmed the final amount from an already conservative submission of the fees, costs, and expenses that the defense team incurred during the two days leading up to the mistrial. Notwithstanding Appellants' assertions, the District Court reviewed the requested amount for reasonableness and properly declined to review for "necessity." The District Court merely sought to compensate Defendants for the fees and costs they incurred because of Schaible's misconduct, and an inquiry into the "necessity" of each expense would not have served that objective.

Appellants also rely on the statutory limitations imposed on fees assessed under 28 U.S.C. § 1927, including the types of expenses that may be awarded as set forth in 28

---

[3] Our decision in this regard is buttressed by the fact that Schaible began defying the Court's orders during discovery. The Court held a telephone conference on the record after it was alerted to certain conduct by Schaible during depositions, including: asking for opinion testimony from lay deponents, asking deponents questions about topics of which they had no personal knowledge, and "clapping" at a deponent. Schaible assured the Court that he would cease this abusive behavior, but repeated some of it shortly thereafter, leaving the Court no choice but to sanction him for his discovery abuses. *See Ferguson*, 2010 WL 2164493, at *2–3.

U.S.C. § 1920. We need not decide whether the Court's awarded sanctions are inconsistent with these provisions, however, because the District Court made clear it was exercising its inherent power as well. Even though inherent-authority sanctions are generally disfavored where another provision—such as § 1927—authorizes sanctions, our decision in *Prudential* allows a district court to depart from this preference when the conduct is egregious or where the statutory provision is not adequate to sanction the conduct. Here, the District Court carefully explained in its memorandum opinion that limiting its award to those categories of costs in § 1920 would not adequately compensate Defendants. Therefore, it was not improper for the District Court to resort to its inherent power to fully compensate Defendants.

Finally, we turn to Appellants' due process claim. Parties and attorneys are entitled to notice and the opportunity to be heard before sanctions are imposed. *Prudential*, 278 F.3d at 191 (citing *Martin*, 63 F.3d at 1262); *see Chambers*, 501 U.S. at 50. Here, Defendants' motion for sanctions provided notice, and the District Court scheduled a hearing. Instead of appearing for the hearing, Schaible and the Firm submitted an affidavit presenting their side of the matter. In addition, after sanctions were assessed, the Court allowed Appellants to submit a letter setting forth their reasons for seeking discovery into Defendants' claimed expenditures. Thus, the Court afforded Schaible and the Firm all the process that was due. They were not entitled to discovery or a hearing on the amount of sanctions. *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d

9

1350, 1358–59 (3d Cir. 1990) ("[A] district court in the exercise of its sound discretion must identify and determine the legal basis for each sanction charge sought to be imposed, and whether its resolution requires further proceedings, including the need for an evidentiary hearing.").

## III

For the foregoing reasons, we will affirm the District Court's judgment in all respects.