**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1633
_____

IN RE: JEFFREY J. PROSSER, DEBTOR

JEFFREY J. PROSSER

v.

TOBY GERBER; FULBRIGHT AND JAWORSKI, LLP;
JAMES J. LEE; VINSON & ELKINS, LLP;
STAN SPRINGEL; JAMES P. CARROLL;
FOX ROTHSCHILD, LLP; GENOVESE, JOBLOVE &
BATTISTA, P.A.; PAUL BATTISTA; THERESA VAN
VLIET; ALVAREZ & MARSHAL, LLC

James. P. Carroll, Chapter 7 Trustee of the bankruptcy
estate of Jeffrey J. Prosser,
                                                     Appellant
_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. No. 3-11-cv-00136)
District Judge: Hon. Curtis V. Gomez
_____

Argued: December 9, 2014

_____

Before: CHAGARES, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: January 26, 2015)

_____

OPINION

_____

Samuel H. Israel, Esq. [ARGUED]
William H. Stassen, Esq.
Fox Rothschild
2000 Market Street
20th Floor
Philadelphia, PA 19103

Yann Geron, Esq.
Fox Rothschild
100 Park Avenue
Suite 1500
New York, NY 10017

Bernard C. Pattie, Esq.
Suite 5
1244 Queen Cross Street
Christiansted, VI 00820

        Counsel for the Appellant

Norman A. Abood, Esq. [ARGUED]
Suite 203
152 North Summit Street
Toledo, OH 43604

Robert F. Craig, Esq.
Suite 203
14301 First National Bank Parkway
Omaha, NE 68154

Lawrence H. Schoenbach, Esq.
Suite 1305
111 Broadway
The Trinity Building
New York, NY 10006

Counsel for the Appellee

SHWARTZ, Circuit Judge.

James P. Carroll, trustee of debtor Jeffrey J. Prosser's bankruptcy estate, appeals the District Court's order vacating the Bankruptcy Court's imposition of 28 U.S.C. § 1927 sanctions. The Bankruptcy Court imposed sanctions because of the numerous and inflammatory submissions Prosser's counsel filed in Prosser's bankruptcy and associated adversary proceeding. Because these filings vexatiously and unnecessarily multiplied the bankruptcy proceedings and the Bankruptcy Court did not abuse its discretion by imposing such sanctions, we will reverse the District Court's order vacating them.

# I

Prosser filed a Chapter 11 bankruptcy petition in 2006. His petition was converted to a Chapter 7 petition and Carroll was appointed as trustee of Prosser's estate. During the relevant portion of his bankruptcy proceedings, Prosser was represented by attorneys Norman Abood, Robert Craig, and Lawrence Schoenbach (collectively, the "Prosser Counsel"), and Carroll was represented by Fox Rothschild, LLP ("Fox Rothschild").

A trial took place in 2008 to adjudicate creditors' objections to Prosser's claim that certain property was exempt from the bankruptcy proceedings (the "Exemptions Trial"). Arthur Stelzer, Prosser's former "valet and personal assistant," App. 2652, testified for the creditors. He testified that Prosser asked him to destroy several of Prosser's computer hard drives after Prosser filed for bankruptcy. Based in part on Stelzer's testimony, the Bankruptcy Court denied the exemptions Prosser claimed. Thereafter, Carroll and others initiated an adversary proceeding, seeking denial of Prosser's discharge under 11 U.S.C. § 727(a), based on evidence that "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3).

In connection with this adversary proceeding, Prosser deposed Stelzer in an effort to undermine his testimony at the Exemptions Trial. During the January 12, 2010 deposition, at which the Bankruptcy Judge presided, the Prosser Counsel inquired into the payment of Stelzer's legal fees by third

parties and contacts Stelzer had with Carroll and Carroll's counsel. With respect to his legal fees, Stelzer explained that he had felt "intimidated" and "frightened" when first served with a subpoena in connection with the Exemptions Trial and that prompted him to seek legal representation. App. 81. Stelzer explained that these legal fees were paid either by the debtor companies or by the law firm representing the trustee in a separate but related Chapter 11 proceeding. When asked whether, as a result of this arrangement, Stelzer had an "understanding" that he would do something "in exchange for them paying for [his] fees," he replied, "[w]ell, if I'm called for whatever, just to come tell the truth." App. 80, 82.

As to Stelzer's contact with Carroll, Dana Katz, a Fox Rothschild attorney representing Carroll, stated to the Bankruptcy Judge that Carroll had "never spoken to Mr. Stelzer outside of trial testimony during the exemptions proceedings." App. 61. Stelzer, however, testified that he and Carroll once had dinner together "long before" Stelzer testified at the Exemptions Trial. App. 77. According to Stelzer, they discussed "how [Stelzer's] life was just in general," "general, light conversation," "[t]he wine [they] had for dinner," and "what it was like to work for Mr. Prosser, Mrs. Prosser, and the children, general, really general chitchat." Id. Stelzer testified that he and Carroll did not discuss Prosser's hard drives, Prosser's finances, or the possibility that Stelzer might later be called to testify in a future proceeding such as the Exemptions Trial.

Two weeks later, on January 26, 2010, the Prosser Counsel filed a motion for an evidentiary hearing into what they labeled an alleged bribery scheme, asserting that Stelzer gave unfavorable testimony during the Exemptions Trial in

5

exchange for "payment of his attorney fees in multiple litigations," App. 181, and that Carroll's counsel had misrepresented Carroll's contacts with Stelzer.[1] The District Court referred the motion to the Bankruptcy Judge on January 29, 2010. That same day, the parties coincidentally appeared before the Bankruptcy Court to address other matters. During the January 29, 2010 hearing, the Bankruptcy Court discussed the Prosser Counsel's motion for an evidentiary hearing and suggested it be opened as a "miscellaneous adversary" proceeding.[2]

During that hearing, William Stassen, a Fox Rothschild attorney, addressed the contacts between Carroll and Stelzer. He informed the Bankruptcy Court that Katz's statement that Carroll and Stelzer had never met prior to the Exemptions Trial was inaccurate and that Carroll had in fact

---

[1] That same day, the Prosser Counsel also filed a motion to stay trial in the separate adversary proceeding relating to Prosser's request for a discharge.

[2] "Miscellaneous proceedings" and "adversary actions" are familiar vehicles for court proceedings, but an amalgam called a "miscellaneous adversary" is not, and the reference appears to be simply a misstatement when the Bankruptcy Court intended to propose the filing of a miscellaneous proceeding. That conclusion is borne out by the Court's later statement in a memorandum opinion that "Prosser was ordered to file the [motion for a hearing] in the main bankruptcy case . . . pending in the Bankruptcy Division so that the Court could open a Miscellaneous Proceeding but [the Prosser Counsel] filed this Adversary instead." App. 466 n.2.

met Stelzer for dinner before Fox Rothschild became Carroll's counsel. Stassen stated:

> [W]e will submit to the Court a corrected statement for the Court's record. Quite frankly, Your Honor, Ms. Katz is devastated. I mean, she's really upset that she made the representation to the Court. I can say emphatically that it was clearly not a knowing statement with regard to [Carroll] not having contact with Mr. Stelzer.

App. 596.[3] The Bankruptcy Court acknowledged Stassen's statement without comment, and the hearing moved on to other matters.

On January 31, 2010, apparently in response to the District Court's referral of their motion for an evidentiary hearing to the Bankruptcy Court, the Prosser Counsel issued a press release entitled "HEARING ORDERED ON BRIBERY SCHEME" in which they stated that Prosser was "the target of [an] alleged bribery scheme" through which Stelzer was provided with free legal services "in exchange for his testimony." App. 598. The following day, the Prosser Counsel filed an adversary complaint (the "Adversary Complaint") in Bankruptcy Court against Carroll and Fox Rothschild, among others, on the basis of their "apparent

---

[3] On February 12, 2010, Katz filed a certification with the Bankruptcy Court to correct the record, stating she had learned after the deposition that Carroll "had met one time with Mr. Stelzer prior to his deposition in February 2008." App. 109.

bribery" of Stelzer. App. 4. The Adversary Complaint repeated the allegation from their press release that Stelzer had been provided "free legal services . . . in exchange for his testimony." App. 598. It also quoted Stelzer's deposition testimony about his dinner with Carroll and asserted that Carroll was "attempt[ing] to distance [himself] from Mr. Stelzer," as shown by his counsel's statement that he and Stelzer had never interacted. App. 46. The Adversary Complaint contended that Fox Rothschild had "violated their duty of candor to the Court" by failing to report the alleged bribery scheme. App. 42. It further alleged that Carroll had failed to report this possible bribery scheme to the United States Attorney as required under 18 U.S.C. § 3057.[4] The Adversary Complaint sought discovery and a hearing "to determine whether sanctions, disqualification and/or referral for further disciplinary proceedings should be imposed." App. 3.

The same day the Prosser Counsel filed the Adversary Complaint, they also filed two objections to Carroll's and Fox Rothschild's quarterly applications for compensation and reimbursement of expenses (the "Fee Objections"), contending that "serious questions ha[d] arisen with regard to the conduct of [Carroll] and/or his [c]ounsel as [were] more

---

[4] This statute provides, in pertinent part, that if a bankruptcy trustee has "reasonable grounds for believing" that a violation of federal law "relating to insolvent debtors . . . has been committed," the trustee "shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed." 18 U.S.C. § 3057(a).

8

fully detailed in the Adversary Complaint." App. 249-50. The following day, February 2, 2010, the Prosser Counsel filed a motion for a hearing regarding an alleged conflict of interest between Carroll and his attorneys (the "Conflicts Motion") arising from payment of Stelzer's legal fees from estate assets in exchange for Stelzer's testimony. The Conflicts Motion argued that Stelzer and Carroll's attorneys "may have engaged in criminal activity (i.e. bribery)." App. 103.

On March 10, 2010, the Bankruptcy Court dismissed the motion for an evidentiary hearing underlying the Adversary Complaint as against Fox Rothschild, holding that, "[b]ased on the corrections made orally by Fox Rothschild during the omnibus motions hearing on January 29, 2010 and in writing thereafter, it is clear that there is no issue in dispute with regard to the veracity of the representation." App. 468 (footnote omitted). That same day, the Bankruptcy Court denied the Conflicts Motion, holding that Carroll was not represented by conflicted counsel, that no specific conduct had been identified warranting an evidentiary hearing as to Carroll, and that the Conflicts Motion was based on Sixth Amendment law generally applicable only in criminal proceedings. On March 15, 2010, the Prosser Counsel voluntarily dismissed the claims embodied in the motion for an evidentiary hearing as against Carroll individually and withdrew the Fee Objections.[5]

---

[5] After the claims against Carroll were dismissed, the Bankruptcy Court asked the United States Trustee to refer the allegations to the United States Attorney, but it stated that it did so only because the allegations were serious, not because it perceived a factual basis for the bribery accusation. The

On April 2, 2010, Carroll moved for legal fees and expenses against the Prosser Counsel pursuant to 28 U.S.C. § 1927, contending that the Adversary Complaint, the Fee Objections, and the Conflicts Motion "were so patently meritless that the Court can reach no conclusion other than that they were vexatiously filed for the purpose of multiplying the proceedings." App. 560.

The Bankruptcy Court granted Carroll's § 1927 motion against the Prosser Counsel. It found that "the litigation against Fox Rothschild should never have been initiated," as the misstatement that Carroll and Stelzer had never met prior to the Exemptions Trial "was a mistake, promptly corrected, and the matter could have been resolved without this suit by a simple phone call between counsel and the subsequent corrected statement to the Court." App. 1609. The Bankruptcy Court explicitly concluded that the Prosser Counsel had "unreasonably and vexatiously multiplied proceedings in bad faith, constituting [a] violation of 28 U.S.C. § 1927[,] by filing" the Adversary Complaint, the Fee Objections, and the Conflicts Motion, App. 1609,[6] and ultimately awarded Carroll $137,024.02 for the expenses associated with these filings and related proceedings.[7]

---

Bankruptcy Court ultimately decided that referral for a criminal or disciplinary investigation was unwarranted.

[6] Relatedly, the Bankruptcy Court stated at an earlier hearing in 2010 that it was "delayed from getting to the merits of particular motions because of all the subsidiary litigation, most of which seems to not have a great deal of merit." Supp. App. 109.

[7] In a later opinion and order filed on December 20, 2011, the Bankruptcy Court spent nearly 110 pages

10

The Prosser Counsel appealed the Bankruptcy Court's sanctions order to the District Court. On February 14, 2014, the District Court held that the Bankruptcy Court erred by imposing sanctions. The District Court held that the Adversary Complaint and the Fee Objections could not have "multiplied" the adversary proceedings under § 1927 because § 1927 does not apply to a filing that initiates a proceeding, and the Fee Objections had been filed in the bankruptcy case, not the adversary proceeding. The District Court also stated that the Bankruptcy Court had not explained how the Prosser Counsel's actions were in bad faith, noting that "the litigation against Carroll was of limited duration" and that, while some evidence in the record suggested bad faith, other evidence suggested the Prosser Counsel's actions were not a result of "dilatory or aggressive litigation practices, but rather the legitimate zeal of attorneys representing their client." App. 2868. For these reasons, the District Court "vacat[ed] the Bankruptcy Court's [orders imposing sanctions] and remand[ed] this matter for further proceedings consistent with this Memorandum Opinion." App. 2869.

---

exhaustively addressing Prosser's amended Adversary Complaint and the request for a referral of bribery allegations to the United States Attorney. After thoroughly reviewing the extensive record before it, the Bankruptcy Court dismissed the claims against the remaining parties and concluded that disqualification or referral for criminal or disciplinary investigation were not warranted, as it could "find no evidence of a bribery scheme," and while it was troubled by the use of estate assets to pay for a witness's counsel without court approval, it noted that, in general, "there is nothing improper about a third party paying legal fees for" Stelzer. App. 2731.

On remand, the Bankruptcy Court concluded that, because the District Court had "found no bad faith" in the Prosser Counsel's conduct, "it would be a waste of time to do anything other than comply with the District Court's directions, which [it] read [to] require that, since the [sanctions] orders have been vacated, that the funds be returned." Supp. App. 921. The Bankruptcy Court thereafter entered an order directing Carroll to release from escrow sanctions payments that had been made up to that point. Order, In re: Jeffrey J. Prosser, No. 3:10-ap-03001 (Bankr. D.V.I. Mar. 18, 2014), ECF No. 424.

Carroll filed his Notice of Appeal on March 14, 2014, challenging the District Court's February 14 order.

II

We have jurisdiction over appeals from orders imposing sanctions pursuant to 28 U.S.C. § 158(d)(1); see In re Miller, 730 F.3d 198, 202-03 (3d Cir. 2013).[8] The

---

[8] The District Court resolved the appeal of the sanctions order after all other relevant proceedings were concluded. Thus, even if the appeal was premature when filed, there were no other relevant matters pending and hence it was ripe for adjudication by the time the District Court ruled. Moreover, although the District Court's order vacated the Bankruptcy Court's order imposing sanctions and said it was remanding for further proceedings, its opinion stated that it was "revers[ing]" the sanctions decision, App. 2868, because it found, in essence, that no proceedings had been multiplied and no facts concerning bad faith had been

Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157, and the District Court had jurisdiction to review the Bankruptcy Court's order under 28 U.S.C. § 158(a). Our review requires us to "'stand in the shoes' of the District Court and review the Bankruptcy Court's decision" to impose sanctions. In re Pransky, 318 F.3d 536, 542 (3d Cir. 2003) (quoting In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 635 (3d Cir. 1998)). "The imposition or denial of sanctions is subject to abuse-of-discretion review." Miller, 730 F.3d at 203. "An abuse of discretion occurs when the court bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." LaSalle Nat'l Bank v. First Conn. Holding Grp.,

---

established. Because the District Court held that § 1927 sanctions could not apply to the filing of an adversary complaint and that the facts did not support a finding of bad faith, the Bankruptcy Court reasonably concluded that the District Court's decision left it with only ministerial tasks relating to the return of sanctions funds that had been placed in escrow. See Supp. App. 921 (Bankruptcy Court stating: "I don't know how I can find differently, even on a remand. So I agree it would be a waste of time to do anything other than comply with the District Court's directions, which I read require that, since the orders [imposing sanctions] have been vacated, that the funds be returned."); see also In re Pransky, 318 F.3d 536, 541 (3d Cir. 2003) (noting bankruptcy court on remand was not required to do additional fact-finding but only to perform ministerial mathematical calculations). Accordingly, because the Bankruptcy Court was required to perform only ministerial tasks on remand, the order vacating the sanctions award was a final order. Pransky, 318 F.3d at 540.

13

LLC, 287 F.3d 279, 288 (3d Cir. 2002); see also Pransky, 318 F.3d at 542 (reviewing bankruptcy court's "findings of fact for clear error and its legal conclusions de novo"); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 181 (3d Cir. 2002) (stating that bad faith under § 1927 is a finding of fact reviewable for clear error).

## III

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Such "sanctions are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings, and they are limited to the costs that result from such delay." LaSalle, 287 F.3d at 288 (emphasis omitted). "[C]ourts should exercise this sanctioning power only in instances of a serious and studied disregard for the orderly process of justice." Id. (internal quotation marks and alteration omitted).

The language and purpose of the statute reflect that these sanctions are aimed at deterring lawyers' bad faith conduct that disrupts the administration of justice by multiplying proceedings in "any court of the United States."

14

28 U.S.C. § 1927. A bankruptcy court is a unit of a district court, and as a result, it may impose § 1927 sanctions. In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 105 (3d Cir. 2008). In the bankruptcy context, the proceedings include adjudication of both the bankruptcy petition and adversary proceedings, which are "essentially . . . self-contained trial[s]—still within the original bankruptcy case." In re Mansaray-Ruffin, 530 F.3d 230, 234 (3d Cir. 2008); see also In re TCI Ltd., 769 F.2d 441, 442-44, 449-50 (7th Cir. 1985) (affirming § 1927 sanctions for filing of baseless amended complaint in adversary action during bankruptcy). Thus, the filing of an adversary complaint may multiply the proceedings in a bankruptcy case, as it can increase the cost of the entire bankruptcy proceeding of which it is a part.

The District Court incorrectly held that the only proceeding that could have been multiplied here was the adversary proceeding. This view both ignores the fact that the adversary proceeding was only a part of the bankruptcy case and fails to account for the barrage of other filings the Prosser Counsel submitted as part of the bankruptcy based on the very events that served as the basis for the Adversary Complaint. Thus, the District Court erred in focusing only on the filing of the Adversary Complaint and holding that such a filing could not constitute sanctionable conduct under § 1927.

Having concluded that the relevant proceedings include both the overarching bankruptcy and the associated adversary proceeding, we next examine whether the Bankruptcy Court's imposition of § 1927 sanctions constituted an abuse of discretion. To impose § 1927 sanctions, a court must "find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner;

(3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." Prudential, 278 F.3d at 188. A court imposing § 1927 sanctions must find bad faith, but that finding need not be made explicitly. Id. at 189 ("An implicit finding of bad faith will support sanctions just as well so long as it is not an abuse of discretion, not based upon clearly erroneous factual findings, and not based upon an error of law."); see also Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 209 (3d Cir. 1985) (finding bad faith standard was met "in light of the entire record and the expressions of the district court judge, who employed the very words of the statute"). "Indications of . . . bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Prudential, 278 F.3d at 188 (internal quotation marks omitted).

We conclude that the Bankruptcy Court did not abuse its discretion in imposing sanctions, as its order did not rest on "a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." LaSalle, 287 F.3d at 288. Under the clearly erroneous standard of review, the record supports the Bankruptcy Court's finding that the Prosser Counsel had unreasonably and vexatiously multiplied and increased the cost of the proceedings in bad faith.[9] First, the Prosser Counsel multiplied the proceedings. The Adversary Complaint,

---

[9] The District Court exceeded its appellate function by essentially substituting its view of the facts, rather than reviewing whether the Bankruptcy Court's factual findings were unsupported.

request for referral to the United States Attorney, Fee Objections, and Conflicts Motion created new issues for Carroll and the Bankruptcy Court to address. Second, there is a basis for concluding that these filings were "unreasonabl[e] and vexatious[]." Id. These multiple filings were, as the Prosser Counsel admitted, prompted entirely by Stelzer's deposition testimony that a third party was paying his legal fees and by Katz's innocent mistake concerning Stelzer's contact with Carroll, which was quickly clarified on the record. As the Bankruptcy Court observed, the Prosser Counsel could have simply inquired into Stelzer's fee arrangement and resolved any confusion regarding his dinner with Carroll without initiating an adversary proceeding, filing motions and objections, or alleging a vast bribery scheme. The Prosser Counsel's failure to engage in such a reasonable inquiry to ensure their accusations had a basis in fact indicates that they engaged in objectively unreasonable conduct. Furthermore, as the Bankruptcy Court stated in its opinion declining to refer the matter for criminal or disciplinary action, the Prosser Counsel's process in advancing their bribery allegations was "suspect," in that they initially filed the motion for an evidentiary hearing in the District Court despite the fact that the Bankruptcy Court had witnessed Stelzer's deposition and had ordered the parties to address the issue, and despite the fact that the Prosser Counsel filed the Adversary Complaint after having reported the issue to the United States Attorney—part of the very relief they requested in their complaint. Moreover, they issued press releases "in an apparent effort to discredit [opposing] counsel." App. 2654. Third, the Prosser Counsel's repeated filings based on a single fact that did not substantiate the bribery accusation plainly delayed and increased the cost of the bankruptcy proceeding, as the parties and the Bankruptcy

17

Court expended significant time and resources addressing them rather than the merits of the bankruptcy case. Fourth and finally, although the Bankruptcy Court's reasons for its finding of bad faith could have been more explicit, its finding was supported by both "the entire record" and its use of "the very words of the statute." Baker Indus., 764 F.2d at 209.

The Prosser Counsel's bribery accusations and the tactics they employed, from the press release to the request for a referral to law enforcement to the motions, objections, and Adversary Complaint, all show a desire to read nefarious motives into a relatively unremarkable event with no proof that the allegedly bribed witness had been influenced at all. In light of this record, the Bankruptcy Court's factual finding of bad faith was not clearly erroneous, and the Court did not abuse its discretion by imposing sanctions under § 1927.

IV

For the foregoing reasons, we will reverse the District Court's order vacating the Bankruptcy Court's imposition of sanctions and remand with instructions that the District Court reinstate the order imposing them.